# CASES ARGUED AND DETERMINED

IN

# THE SUPREME COURT,

## APRIL TERM, 1857.

~~~~~~~~~~~~~~~~~~~~~

## BIRD v. DENNISON.

A mere survey and marking lines of a boundary, without an enclosure of the premises, is not a possession in law, unless made so by complying with the statute in reference to the mode of maintaining possessory actions on public lands.

The cases of Plume v. Seward, and Murphy v. Wallingford, affirmed.

Per Burnett, J.—As to the implied notice arising from the possession of a party under an unregistered deed, it is a question of bad faith, and it should be left to the jury whether the subsequent purchaser had actual notice, or such means of notice as to make his negligence a species of fraud.

A grantee entering into possession under a deed, thereby acquires no greater possession than his grantor had.

The grounds on which registry acts are based, are, that the party who fails to record his deed, places it in the power of his grantor to commit a fraud upon others, and the law holds him responsible, as assisting the fraud.

The penalty for failing to record conveyances declared in the statute, must be limited to conveyances as defined by the statute, and cannot, by implication, be extended to instruments for the recording of which it makes no provision.

APPEAL from the District Court of the Ninth Judicial District, County of Butte.

This was an action of ejectment for the recovery of part of lot number eight, block one, in the city of Oroville. The defence set up title in the United States; that defendant took possession of the same in the year 1855, and had erected thereon a store-

house, and had used and occupied the same ever since; that plaintiff's grantor had, at various times, disclaimed all right or title to the lot, and had thereby induced defendant to erect and make valuable improvements thereon, of the value of two thousand dollars, which he asked, in case of a recovery by plaintiff, be awarded him. On the trial of the case, plaintiff introduced in evidence a deed, duly executed to him by one Ralph Bird, dated the twenty-first of February, 1856, properly acknowledged, and recorded on the twenty-second of February, 1856. The defendant having first proved the signatures to the following instrument, offered it in evidence, which being refused, the defendant excepted:

"Ophir, July 19, 1855.

"Know all men by these presents: That I, the undersigned, hereby transfer and sell unto T. A. Richardson, all my right, title, and interest, in and to certain lots in the town of Ophir, known and designated on the chart and plan of said town as numbers one, two, seven, and eight, of block number one, for the sum of twenty dollars in hand, and the further sum of one hundred and eighty dollars, to be paid in the space of twelve days,. on the payment of which this conveyance shall be delivered to said party, and will be the receipt for the payment of the same.
"Ralph Bird."

"Ophir, August 20, 1855.

"I, the undersigned, do this day transfer all the rights guarantied by this instrument to myself, to N. Carroll, for value received.
"T. A. Richardson."

Defendant then offered to show that under said deed, N. Carroll took possession of the lot in August, 1855, and that Carroll, and under him the defendant, Dennison, had continued in the open and visible possession and occupation of the same, until the present time, and that he was in such open and visible possession at the time of the sale thereof from Ralph Bird to plaintiff. This evidence the Court refused to admit, and defendant excepted. The defendant, among a number of other instructions, asked the Court to charge the jury—

"That a mere survey, and marking lines of boundary, without an enclosure of the premises, is not possession in law, unless made so by complying with the statute in reference to the mode of maintaining possessory actions on public lands, passed April 20, 1852." This the Court refused, under the exception of defendant.

The Court, at the instance of plaintiff, among other instructions, gave the following two, under the exception of defendant:

"The jury are instructed that, though the lot in question were

a part of the government land, or a part of the mineral land belonging to the United States, it would be no defence to this action, under the evidence in the case."

"The jury are instructed that there is no evidence before them of the defendant purchasing the property from any one; and, further, that there is no evidence before them of any sale of the property in controversy, by Ralph Bird, to any person other than plaintiff, that would or does invalidate the sale that he made to plaintiff, by his deed of conveyance, given in evidence in this case."

Judgment was rendered for plaintiff. Defendant moved for a new trial, which was denied. He then appealed from the order refusing the new trial.

*Robinson, Beatty & Botts*, for Appellant.

The Court, at the request of the plaintiff, charged the jury that they should disregard this evidence, so far as it went to invalidate the title of the plaintiff. The defendant excepted.

This we charge to have been error, which entitles us to have the judgment reversed, and the cause remanded.

We claim that the notorious possession of the defendant was notice to the plaintiff of the defendant's equity, and that he, therefore, stands in no better position than his grantor.

As the question of notice arising from possession is the main point involved in this case, and as the Court has intimated an opinion adverse to our position, we are compelled to discuss it somewhat at length.

That this is the doctrine of the common law is not denied, but it is said the rule has been abrogated by statute.

The statute, section twenty-four of an act concerning conveyances, declares that every conveyance, whereby any real estate is conveyed, to operate as a notice to third persons, shall be recorded in the office of the recorder of the county in which such real estate is situated. Section twenty-five provides that every conveyance properly certified and recorded, shall, from the time of filing, impart notice to all persons of the contents thereof. The twenty-sixth section provides that every unrecorded conveyance shall be void, as against any subsequent purchaser in good faith, and for a valuable consideration. And these are all the statutory provisions that are supposed to affect the common law doctrine, that the notorious possession of real estate raises the legal presumption of knowledge of the legal or equitable title of the occupant.

It is difficult to perceive how an act, by which that is made constructive notice, which was not constructive notice before, can be so construed as to abrogate a rule making another and a different thing, a thing nowhere alluded to in the statute, constructive notice. The common law can never be annulled, ex-

cept by express provision of the statute; unless the new rule expressly repeals the old one, or is wholly incompatible with it, both must stand.    Thus, in Jackson v. Bradt, 2 Caines Rep., 169, a statute of New York provided that every former division of lands, of which there was a map or note in writing, should be a valid partition thereof, provided such note be proved before a Judge of the Supreme Court, and a true copy of such map be filed, and such note recorded.    It was argued that no other mode of partition could be valid.    But Justice Kent decided otherwise.    He says : " If the conditions on which all such previous partitions were declared valid be not performed, the transaction is left as it was before, and is to be considered independent of the act."    This is certainly a decision in point, and one emanating from the highest authority.

The Legislature might undoubtedly have abrogated all or any of the constructive notices of the common law.    We contend that they have done no such thing.    Let us consider the three sections of the statute from which this inference is drawn, a little more in detail.

The twenty-fifth section makes the recording of a deed constructive notice of its contents.    The twenty-fourth section provides, that although the registration is necessary for purposes of notice, the failure to record shall not invalidate the conveyance, as far as the parties are concerned.    The twenty-sixth section declares, that an unrecorded deed shall be void as against any subsequent purchaser in good faith, and for a valuable consideration.    The statute undoubtedly is verbose, and reduplicative. These three sections might be reduced into one, declaring that an unrecorded conveyance, although good between the parties, should be void against any subsequent purchaser in good faith, and for a valuable consideration; whilst on the other hand, a deed properly recorded, should be presumed to be known to all the world.    This is certainly the sum and substance of the three sections.    In all this there is not a word touching the pre-existing doctrine of constructive notice.    The statute neither says expressly that the common law rule is abrogated, nor does it declare that there shall be thereafter no other constructive notice, except the one created by statute.

But we are not left, without authority, to a system of *a priori* reasoning on this subject.    Statutes similar to, nay, identical with ours, have been passed in the several States, and in none of them have we been able to find an authority for the suggestion thrown out on " Mesick v. Sunderland," that it was the intention of the statute to do away with all constructive notice, except that arising from registry.    Nor has our opponent, as it appears from his brief, been more successful, though challenged to the production of a single authority in support of the proposition.

In England, by the twenty-seventh Hen. VIII, " no convey-ance by bargain and sale shall be made, or take effect, unless it is enrolled in one of the Courts of Westminster, or else in the county where such land lies." The words of this statute are : " no conveyance shall take effect." Yet, an unenrolled deed of bargain and sale has always been held valid against the grantor, and against subsequent purchasers with notice. And in Eng-land it is admitted that possession is constructive notice. In 1 Burrows, 474, Lord Mansfield is made to say : " A buys an es-tate from B, and forgets to register his purchase-deed. If C, with express or implied notice of this, buys the estate for a full price, and gets his deed registered, this is fraudulent, because he assists B to injure A." So, Blackstone, 3 Com., 338, says : " The registry is designed to give notice, in order to prevent purchasers being imposed upon by prior conveyances, which they are in no danger of, when they have notice of them.

In Alabama, a deed, unless recorded within six months, is " void and of no effect against a subsequent bona fide purchaser for a valuable consideration, not having notice thereof;" and there it is held that possession imparts notice. See Ohio Land Insurance Co. v. Ledyard, 8 Alabama R., 866.

The rule of constructive notice, as derived from a notorious occupation, is a just and wholesome one, sanctified by the wis-dom of ages, and ought not to be discarded upon light or insuf-ficient grounds. It serves to prevent fraud, and few better illus-trations of its beneficial workings can be furnished, than the cir-cumstances of this case afford.

Again, the fourth instruction, we think, should have been given. The Court refused to instruct the jury that a mere sur-vey and marking lines of boundary, is not such a possession as would authorize a recovery in ejectment. In Jackson v. Schoon-maker, 2 Johns. R., 230, Kent, C. J., held that an actual occu-pancy, a *possessio pedis*, which is definite, positive, and notorious, is necessary to constitute such a possession ; and although this Court has somewhat relaxed the stringency of the rule as laid down by Justice Kent, they have never gone so far, nor presume never will, as to sanction the principle involved in the refusal of this instruction.

*Stephen J. Field* for Respondent.

The defendants relied as their defence chiefly upon a contract of sale made by Ralph Bird to one T. A. Richardson, dated July 19, 1855, the assignment of the contract by Richardson to one N. Carroll, and a sale by Carroll to the defendant, with proof that the defendant was in possession under the contract, having made valuable improvements, and that Ralph Bird, the grantor of the plaintiff, had made, in August, 1855, and afterwards, to different

20

parties, statements to the effect that he had sold the premises, or had abandoned them, or had no interest in them.

The contract of sale was not acknowledged or recorded, nor is there any evidence in the record that the plaintiff had any knowledge of the existence of any such contract; or any knowledge of the possession of the defendant, or that the improvements were made by him.

There is no evidence of any knowledge of its existence by the plaintiff. Possession is not notice under our statute. So decided in this Court in Mesick *v.* Sunderland. But more, if possession were notice and its proof were accompanied with the contract of sale, the defendant would then have only an equitable title, which would not avail as a defence under our Practice Act, because not set up in the answer.

Where there is no legal evidence before the Court of a purchase or sale which would invalidate a title by deed, it is proper so to instruct the jury. It is simply excluding what never should have been admitted.

MURRAY, C. J., delivered the opinion of the Court—TERRY, J., concurring.

The Court below erred in refusing the fourth instruction asked by the defendant's counsel. It is in the language of this Court, in the cases of Plume *v.* Seward, 4 Cal., and Murphy *v.* Wallingford, October Term, 1856.

The respondent contends that there was no evidence to point the instruction, and, therefore, it was immaterial. On examination of the record, it appears that one of the points of controversy was as to the location of the premises in dispute, and the instruction was pertinent in this respect, and should have been given.

Judgment reversed, and cause remanded.

BURNETT, J.—This was an action of ejectment to recover possession of certain premises. On the trial, the defendant offered in evidence a written contract for the sale of the premises in controversy, made by the plaintiff's grantor, Ralph Bird, before the date of the deed to plaintiff. This was refused by the Court upon the ground that such agreement was not acknowledged and recorded, and that it had not been set up in the answer. This agreement, and all evidence in relation to it, were properly excluded, and this action of the Court below is not objected to in this Court.

The defendant's counsel, in their printed brief, say : " The defendant alleges that the plaintiff's grantor, previous to the sale to the plaintiff, had encouraged the defendant to purchase and build upon the lot in controversy, disclaiming all interest or title in himself, and that plaintiff, at and before his purchase, knew

this fact." Upon reference to the defendant's answer, it is seen that there is no express allegation that plaintiff "knew this fact;" and the only ground that can support this statement, is the alleged notorious possession of the lot by defendant anterior to, and at the date of, the deed from Ralph Bird to his son, the plaintiff; and this ground can only be supported upon the assumption that such possession was *notice*.

That such conduct on the part of Ralph Bird, would operate as estoppel to him, there would seem to be no question. Sugden on Vendors, ch. 22, section 20. But does it affect the plaintiff, unless knowledge of that fact be brought home to him ? And is the defendant's notorious possession equivalent to that knowledge ? This question is one of very great importance and requires some examination.

The twenty-sixth section of the act concerning conveyances, provides that every conveyance of real estate which shall not be recorded as provided in this act, shall be void as against any subsequent purchaser in good faith and for a valuable consideration. Other sections of the same statute provide that a conveyance, duly acknowledged and recorded, shall be notice of its contents to all subsequent purchasers and mortgagees.

In the case of Mesick v. Sunderland, decided at the last July Term of this Court, it was held "that it was the intention of the statute to protect the purchaser of the legal title against latent equities or mere executory agreements, and to abolish the presumption of notice arising from possession." This ruling is controverted by defendant's counsel, and they insist that the object of the statute, like the recording acts of other States and of England, was to make that constructive notice which was not so at common law; but that it was not the intention of the act at the time to abolish other constructive notices, but to leave them in full force, as they were not either contradictory to, nor inconsistent with, the constructive notice created by the act. "The statute," say they, "neither says expressly that the common law rule is abrogated, nor does it declare that there shall be thereafter no other constructive notice, except the one created by statute."

In the case of Norcross v. Widgery, 2 Mass. R., 508, the Court says : " The provision of the statute for registering conveyances, is to prevent fraud by giving notoriety to alienations; but if the second purchaser has notice of the first conveyance, the intent of the statute is answered, and his purchase afterwards is a fraudulent act. His notice may be express or it may be implied, from the first purchaser, being in the open and exclusive possession of the estate under his deed."

The same learned Judge, in the same case, says : " We would observe that the statute requiring the registry of conveyances being so very beneficial, and it being so easy to conform to it,

when a prior conveyance, not recorded until one of a subsequent date is attempted to be supported, on the ground of fraud in the second purchaser, the fraud must be very clearly proved."

So in the case of Call v. Hastings, 3 Cal. R., 183, Mr. Justice Heydenfeldt in delivering the opinion of the Court, said: " The evident intention of the statute seems to be, to protect subsequent purchasers, without notice, actual or constructive."

In Massachusetts, New York, Pennsylvania, Kentucky, Alabama, and in England, it seems to be fully settled that notorious and exclusive possession is implied notice, and puts the subsequent purchaser or mortgagee upon inquiry.   The statutes of those states, as also that of England, are substantially the same with the law of this State.   In all of them it is provided in substance that an unrecorded deed shall not prevail against a subsequent purchaser or mortgagee, in good faith and for a valuable consideration.

It would require more time and labor to examine the statutes of other States, and the decisions under them, than I can spare ; but it is thought they are substantially the same in all; and it must be conceded that so far as adjudged cases can go, the weight of American and English authority certainly preponderates greatly in favor of the position taken by defendant's counsel, that possession is implied notice.   " But in France they have adhered much more rigidly to the letter of their old code respecting registration, and held that a creditor or purchaser might plead want of registration in bar of a prior incumbrance, though such creditor or purchaser had full notice of a prior incumbrance, before he made his own contract or purchase."   2 Bl. Com., 343, note 68.   And in the same note it is stated that it has been much doubted in England, whether the Courts ought ever to have suffered the question of notice to be agitated as against a party who has duly recorded his conveyance.

In the case of Jaques v. Weeks, 7 Watts, 269, and which was a case very fully considered, Mr. Justice Sergeant says : "There is much plausibility in the argument that the strict letter of the law ought to be enforced, and that nothing should be allowed to dispense with the actual recording of the instrument.   But when this doctrine comes to be applied in practice, it is found to be too strict to be insisted on ; leases occur in which such a construction of the law would sanction injustice and reward the most palpable fraud and iniquity.   Courts, therefore, in the exercise of equity, have considered certain cases not within the intention of the law given, and looked to the object and design of the recording acts rather than their dry letter."

There is certainly great force and much truth in these remarks.

At first view it would seem easy to comply with the letter of the statute, which is plain and explicit, even so far as to provide a form for the certificate of acknowledgment.   But when we

Bird *v.* Dennison.

come to look into cases, we shall find defects in the certificates of acknowledgment in many, and errors in the recording in a few cases, which have been committed in the hurry of the moment, by officers of the law. These defects often pass unseen for years, and then some individual, looking for defects from motives of speculation, finds them out, purchases from the original fraudulent grantor, and sets up his title after the first purchaser has been in open and notorious possession for years, and made valuable improvements upon the property. On the other hand, if the law indulges parties in carelessness, the benefits resulting from the rule are practically destroyed.

From the nature of the subject, there can be no rule adopted that will not work great hardship in many cases. All that can possibly be done is to adopt that rule which will, in the end, as a general system, produce the most good. What that is, it is most difficult to tell. There is a distressing conflict in the views of the highest Courts. Men of the greatest experience, and possessed of the most ample knowledge, have essentially differed. In this state of things, judges are left more at liberty to decide according to their own views.

The main objects of our statute concerning conveyances are: First—To provide an easy and permanent mode of *proving* the *execution* of the instrument, and: Second—To give notice of its *contents* to subsequent purchasers. To secure the first object, the acknowledgment before the proper officer, and in the proper form, is necessary; while, to give notice of the contents of the deed itself, the acknowledgment is not, in the nature of the case, so much required. While, therefore, defects in the acknowledgment might make it necessary to prove the execution of the deed by other testimony, it would seem that recording the deed, even with a defective acknowledgment, would practically give the same notice of its *contents*, as if recorded with a proper acknowledgment. Were this the law, it is apprehended many grave difficulties might be avoided, without injury to any one, except perhaps in very rare cases. The honest man only wishes to know the contents of the deed, and if of record he could know this, whether the acknowledgment is in due form or not. But our statute has followed the statutes of other States in this particular, and only makes the recording of the deed when properly acknowledged and certified, notice to third parties. We have, therefore, no discretion left, but must follow, not make the law.

By our statute, an unrecorded deed is good as between the parties, and it is only void as against a subsequent purchaser, in *good faith*, and for a *valuable consideration."* The purchase must not only be in good faith, but it must also be for a valuable consideration. Both these requisites must exist, or the subsequent purchaser can gain no advantage over others. Before he should take the property of others on the ground of their negli-

gence or mistake, he should be free from error himself. The same reasonable amount of diligence should be required of him as of others.

What then, constitutes *good faith* in the purchaser? And what rule can the Courts lay down for defining and ascertaining it? In the case of Mesick *v.* Sunderland, this Court expressed some doubt as to whether actual notice of the unrecorded instrument would be sufficient proof of a want of *good faith;* but in the later case of Dennis *v.* Burritt and others, decided at the last October Term, it is expressly admitted as being sufficient to defeat the deed of the subsequent purchaser. This would seem to be the clear intent of the statute, otherwise the phrase *" good faith,"* would not have been used, but only the phrase *"for a valuable consideration."* The statute did not intend that every subsequent purchaser, with a recorded deed, should be preferred to a prior purchaser, whose deed was unrecorded, but only a certain class of subsequent purchasers.

Is, then, the possession of the party holding under an unregistered deed, implied notice under our statute? To say that it is, in all cases, would seem to be laying down an unsound rule. This possession may be very recent—may be scrambling and irregular, and the purchaser may not have the means of ascertaining it. On the other hand, to say that in no case can it be even matter of evidence of bad faith in the subsequent purchaser, would seem equally unsound. From the nature of the subject, there can be no uniform rule laid down by the Courts. The facts and circumstances of each particular case must determine it. As it is a question of bad faith, it should be left to the jury to decide in each case, whether the subsequent purchaser had actual notice, or such means of notice as to make his negligence a species of fraud. And to prove such actual notice, or gross and willful carelessness, the notorious possession of the first purchaser, and the knowledge of that fact by the subsequent purchaser, as well as other circumstances tending to prove these conclusions, should go to the jury as matter of evidence. It would seem clear that even actual knowledge of the prior conveyance might be proven by circumstantial testimony. Jurors are better judges of men's intentions and motives, than Courts themselves. From their daily intercourse in business, and from their knowledge of men, and the circumstances of society at any particular time or place, they are best capable of doing strict justice between the parties, in each particular case.

Another question arising in this case is, whether our Registry Act affects the equities between the parties. Are these equities embraced within the letter or spirit of the act, taken as a whole system?

The act is one concerning *conveyances,* and the thirty-sixth section expressly defines what is intended by the term *conveyance,*

which is an *instrument* in writing, by which any real estate, or interest in real estate, is created, aliened, mortgaged, or assigned, and then expressly excepts " wills, leases for a term not exceeding one year, and executory contracts for the sale or purchase of lands." The act not only provides how land may be conveyed, and defines what a conveyance is within the meaning of the act, but it then goes on to provide minutely how such conveyance shall be acknowledged, certified, and recorded. After these minute and explicit provisions, the act then expressly declares the *effect* of such conveyance thus acknowledged and certified as a matter of proof (section 29). The act also expressly declares the effect of *such* conveyance, when acknowledged, certified, and recorded; first, as *proof*, and second, as *notice*, (sections 24, 25, 30,) and lastly the statute, in the twenty-sixth section, expressly defines what shall be the *consequence* of a failure to record *such* conveyance, which is that *it* " shall be void as against any subsequent purchaser," etc. The statute, taken as a whole, is consistent with itself. It first tells you how you may do a certain thing—makes it your duty to do it—expressly points out the reward of obedience—and as expressly tells you what shall be your *punishment* for disobedience. And all these different provisions are co-extensive with, and hang one upon the other. They are but parts of one system.

When an express definition is given in a statute, it must be generally held to *include* all intended, and to *exclude* all not intended. If the definition does not do this, it lacks *completeness and certainty*, requisites that must exist to constitute a good definition itself. If, then, the law-maker gives us an express definition, we must take it as we find it, or we must conclude that he has failed to make a clear definition of his own meaning, and before we should come to such a conclusion, this fact should appear clearly inconsistent with his definition. So, when the statute expressly defines what is a conveyance, and expressly states what effect as *proof* and *notice*, it shall have when properly acknowledged, certified, and recorded, and also what effect the failure to record *such* conveyance shall have upon the rights of parties, we must regard these as express provisions, intended by the act to say so much, and no more. For when the law-maker assumes himself to set out the consequences of a disobedience to his will, no other consequences can be logically and fairly considered as coming within the scope of his intention. If he attempts to set out such consequences, he must be presumed, from the very nature of the act, to intend to complete his work, and not to leave it unfinished.

The reasons for this construction of the law would seem to be ample. Under our free system of government, every man has the right to use his own property as he pleases, and to make what contracts he pleases in reference to it, provided he does

not injure others, or violate some law.  The ground upon which the Registry Acts are based, is, that the party who fails to record his deed, places it in the power of his grantor to commit a fraud upon others, and the law considers the purchaser as assisting the grantor to do this, and holds such purchaser responsible accordingly.  So, when the subsequent purchaser does not act in good faith, the law esteems him as aiding the grantor in the commission of a fraud, and makes him equally responsible.  It is, then, only upon the ground that the first purchaser has violated the law in failing to record his conveyance, in a case where the law expressly makes it his duty to do so that the statute makes him responsible.

If the statute intended to embrace cases not mentioned in it, it would certainly have said so; and at the same time it would have provided means to enable the party to protect himself.  If it intended to change the established law in reference to certain cases, and require a new duty or inflict other consequences unknown to the existing law, then it would, in common justice, have provided the means of protection.  At all events, it would have given fair notice of its intention.  In reference to conveyances, the statute has done this.  The party to be affected is explicitly told how he may protect himself, and what will be the consequence if he fails to comply.  The law has treated him fairly.  But how stands the fact with regard to those cases not embraced within the act?  The law will not allow the party to record his lease, when it is for a term not exceeding one year, nor will it allow him to record a notice of his equity, except in the case of an executory contract for the sale or purchase of land under the amendatory act of 1855 ; and if the party does record, the act is simply idle, and does him no good.  How, then, can he protect himself?  Or, is there no protection intended?  Does the law intend to visit him with a forfeiture, when he has violated no law?  Or can it be justly said that the law intends thus to afflict him upon general principles, not clearly defined or laid down in any statute ?

In defining the term conveyance in section thirty-six, there are certain exceptions stated, as already mentioned ; namely : wills, leases, and executory contracts.  Powers of attorney are also excepted, but they are especially provided for in sections twenty-seven and twenty-eight.  If, then, the act intended to embrace the equities existing between the parties, and to place it beyond their power to protect themselves, how can a tenant for a term not exceeding one year, have any security that his landlord will not sell the premises and he be turned out by the purchaser before the end of the term ?  He has done all he could, and all that the law required or even allowed him to do.  He has made his contract, entered into the premises, and holds possession, open and notorious, and surely the law must protect him.  And will

not the same rule apply to those equities that the law allows to exist and does not allow to be recorded? In the case of Morton *v.* Robards, 4 Dana, 258, the Court held that the Kentucky statute requiring deeds to be registered only concerned *legal conveyances,* and left the equities between the parties untouched, and that notorious possession is notice of the equity of the occupant.

But especially are these views applicable to this case. Here the plaintiff claims the premises simply on the ground of prior possession in his grantors. From the nature of the case he was bound to know their previous acts. When a party acquires a right by possession, this right depends solely upon his own acts, independent of the consent of others, and the purchaser from him must know what those acts have been. And as a party can acquire a title by his own act, so he can abandon it in the same way; and his grantee must take notice of the fact, when the party in whose favor the disclaimer was made, is in the actual possession of the premises.

I am aware that these views, at least a portion of them, are opposed to the decision of this Court in the case of Mesick *v.* Sunderland, and it is with sincere regret that I feel myself compelled to dissent from the opinion of my associates, for whose judgment I entertain the highest regard. I am compelled to consider that decision as extending the provisions of an act, harsh enough in its character, (as this Court has already held, 3 Cal. R., 183,) to cases not contemplated by it. The practical and inevitable result of that decision, had it been made before the passage of the amendatory act of 1855, allowing executory contracts to be recorded, would have been to prevent all such contracts from being entered into. For no prudent man, knowing such a decision, would have ventured to purchase real estate on time, at the risk of losing all the payments he had made, and all the improvements and payments he might thereafter make. And thus to clog men in the sale of their property, without any express law, would seem to be a very harsh measure of judicial construction, equally repugnant to the letter and spirit, reason and object, of the statute.

Another objection made by defendant's counsel to the ruling of the Court below, was the refusal to give this instruction:

"Fourth, That a mere survey and marking lines of boundary without an enclosure of the premises, is not a possession in law, unless made so by complying with the statute in reference to the mode of maintaining possessory actions on public lands in this State, passed April 20th, 1852."

The plaintiff's counsel in answer to this objection says:

"There is no error in this instruction. It is in direct conformity with the decision of this Court, in Murphy *v.* Walling-

ford, decided at the October Term, 1856, and Plume *v.* Seward' 4 Cal. Rep., 94."

If there was no error in the *instruction*, it should have been given. I presume this statement of plaintiff's counsel was an unintentional mistake. The Judge of the Court below doubtless refused this instruction because he considered it inapplicable to the particular case, especially as he gave certain instructions of the plaintiff, which, if correct, rendered this instruction improper. There were some eight instructions given by the Court, for the plaintiff. The substance of the fifth instruction was, that if the grantors of Ralph Bird were in possession of a part of the tract, at the date of the deed to Ralph Bird, claiming title to the whole, and Ralph Bird took possession of a part, in the name of the whole tract as described in this deed, there being no adverse possession at that time, then said Ralph Bird's possession extended to the whole tract described in the deed, although the actual settlement and improvements may not have embraced the entire tract; and that such possession in Ralph Bird came down to plaintiff, and plaintiff was therefore entitled to recover.

This instruction would seem to be too broad in its terms, and therefore not proper in the case then before the Court. In the case of Ellicott *v.* Pearl, 10 Peters, 441, the question was, what possession of land is sufficient to bar an adverse title thereto, under the Statute of Limitations, and Mr. Justice Story, in delivering the opinion of the Court, uses this language : " An entry into possession of a tract of land, under deed containing specific metes and bounds, gives constructive posssession of the whole tract, if not in any adverse possession, although there may be no fence or enclosure around the ambit of the tract, and an actual residence only on a part of it."

That this possession is sufficient to constitute a bar to an adverse title, seems well settled, both by reason and authority. The party out of possession, and who claims under an adverse title, is bound to know the limits and extent of his own property, and the party occupying gives the other notice of the fact of adverse possession, by his *actual* possession of a part, and by his deed he gives the owner notice of the *limits* of his possession. The adverse claimant out of possession, if his title is good, can recover the entire tract as easily as a part, and for that reason he is not injured by the rule as above laid down. His remedy is always good for all or none, and therefore he had as well sue for all as a part. If he sleeps upon his rights he is presumed to give them up entire.

But it is apprehended that a very different rule should prevail in other cases. What constitutes possession sufficient to maintain ejectment, it is not always easy to describe in words. In the case of Plume *v.* Seward & Thompson, 4 Cal. R., 94, it was held that the possession " must be an actual *bona fide* occupation,

a *possessio pedis*, a subjection to the will and control, as contradistinguished from a mere assertion of title, and the exercise of casual acts of ownership, such as recording deeds, paying taxes, etc." In the late case of Murphy v. Wallingford, it appeared that, "in 1850, the plaintiff entered upon a tract of land in El Dorado county, caused it to be surveyed and the boundaries marked, built a house upon it, in which he resided, and enclosed and cultivated a small portion of the tract; in 1852, the defendant entered upon the land within the boundaries of the survey, but not within the actual enclosure of the plaintiff," October Term, 1856, and this was held not to be sufficient possession to maintain the action. And in the case of Sweetland v. Froe, decided at the last April Term of this Court, it was held that " the plaintiff, having failed to show a compliance on his part with the provisions of the statute, could not recover in this action any land not covered by his actual enclosure."

It must be conceded that what will constitute an actual *bona fide* occupation of land, a subjection to the will and control, must depend much upon the local situation of the premises, the local customs and circumstances of the country, the business for which the land is used, and the policy of the law, and the end it intends to accomplish. Since the passage of a Possessory Act, it has become the settled intention of the law that public lands shall not be monopolized by speculators, but reserved as homes for *bona fide* settlers, in *limited* quantities. The act of 1852 provides the mode of gaining possession of one hundred and sixty acres, without an actual enclosure of the whole tract.

The question then arises whether the plaintiff can claim any higher right from the fact of the prior deeds of his grantors, than those grantors themselves possessed. Will the mere making of a deed, and entering into possession under it, confer any *additional* right upon the party? or does he stand precisely where his grantor stood, and only entitled to the same rights, and no more? If the policy of the law regulating possessory actions could be defeated by the passing of deeds from one party to another, then the beneficial effects of that act would fail, and the act prove powerless to accomplish the very end contemplated. The law is an efficient and practical system, and the means necessary to accomplish the act intended are usually not wanting. And it would seem clear upon principle, that a deed under such circumstances would confer no additional rights upon the grantee. If he performed other and additional acts, of his own, such as making additional improvements, these would strengthen his claim. But, by his deed, he gains no greater possession than his grantor, for the purposes of sustaining an action.

These considerations lead me to the conclusion, that the Court below erred in refusing the third and fourth instructions of defendant; in limiting the testimony as to the statements of Ralph

Bird; and in giving all of the instructions of the plaintiff.  These instructions are so connected that it is difficult to separate them, and, taken as a whole, they are erroneous.  Some of them, if sufficiently qualified, would be unobjectionable.  As a whole, they are predicated upon the ground that the deeds created a greater right in the grantee than the grantor himself possessed; that is, greater in *extent* of possession, and that plaintiff was not bound by the alleged acts and words of Ralph Bird, before the date of the deed from him to plaintiff.

But as the defendant did not except to the action of the District Court, in giving the first six instructions offered by plaintiff, his exception being only to the seventh and eighth, he cannot avail himself of any alleged error in regard to those six instructions.  It is true, that this failure to except is not noticed by the plaintiff's counsel, and therefore not insisted on by him; still, we are precluded from taking any notice of them, so far as the disposition of the case is concerned.  To do so would be exceeding our jurisdiction, which is but appellate, and would be unjust to the District Court.  As the case should in my opinion be sent back upon other grounds, and as the points included in the six instructions are important, I have given my views respecting them.