[No. S024399. Sept. 2, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
MARC EDWARD BROUSSARD, Defendant and Appellant.

**COUNSEL**

Jim Fahey, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama and Ronald A. Bass, Assistant Attorneys General, Mark S. Howell, Aileen Bunney and Sharon Rosen Leib, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KENNARD, J.**—In 1982, California voters by initiative added a provision to the state Constitution establishing a new constitutional right: the right of every crime victim to obtain restitution from the person committing the crime for all losses suffered as a result of the criminal act. (Cal. Const., art.

I, § 28, subd. (b).) The constitutional provision directed the Legislature to enact laws empowering trial courts to make restitution orders when sentencing convicted criminals. (*Ibid.*)

We granted review in this case to determine whether the Legislature has complied with this constitutional obligation to enact implementing legislation. Defendant Marc Edward Broussard, whose sentence for the crimes of theft and receiving stolen property directs him to pay restitution to the victims of these crimes, contends that the legislation passed to implement the constitutional right of restitution did not fully implement that right. He argues, in brief, that under existing law a defendant convicted of a crime and denied probation may be ordered to pay restitution only when the criminal act caused physical injury to the crime victim. No restitution order is permitted, defendant maintains, when the loss to the crime victim is purely economic.

We reject defendant's contention. The legislation implementing the constitutional right of restitution, interpreted reasonably in light of its evident purpose, authorizes trial courts to order criminals to compensate all crime victims, whether their loss results from a physical injury or from the theft or destruction of their property.

### FACTS

In February 1991, defendant, who was facing criminal charges in at least four separate cases, entered into a plea bargain. He pleaded guilty to two counts of receiving stolen property (Pen. Code, § 496, former subd. 1) and pleaded no contest to one count of grand theft (Pen. Code, § 487, subd. 1). In return, all of the remaining charges were dismissed. On March 28, 1991, the trial court sentenced defendant to serve two years and eight months in prison, and ordered him to pay restitution totaling $5,545[1] to the victims of the three crimes of which he had been convicted. None of these crimes involved physical injury to the victim.

Defendant appealed, contending that the trial court lacked the power to order him to pay restitution to the victims. He argued that under the controlling statute, Government Code section 13967, subdivision (c),[2] the trial court lacked the power to order him to pay restitution to the victims because none suffered physical injury. The Court of Appeal rejected the

---

[1]The abstracts of judgment from the three cases show that the trial court imposed restitution totaling $6,545. Following the Attorney General's concession of a $1,000 inaccuracy in one of the abstracts, the Court of Appeal reduced the total amount of restitution to $5,545.

[2]Unless otherwise stated, all further statutory references are to the Government Code.

contention, concluding that under section 13967 restitution could be imposed for purely economic loss. We granted defendant's petition for review.

I

Under section 13967, subdivision (c), when a sentencing trial court denies probation to a criminal defendant, it must, unless there are "clear and compelling reasons" not to do so, order the defendant to pay restitution to any "victim" who "has suffered economic loss as a result of the defendant's criminal conduct . . . ."[3] On its face, the statute mandates restitution whenever a crime victim has incurred economic loss regardless of whether the victim suffered any physical injury.

 Defendant, however, argues that economic loss alone is insufficient, and that in addition the statute requires the victim to have suffered physical injury as a result of the defendant's criminal act. Defendant focuses on the word "victim" in the statute, turning to section 13960 for a definition of "victim."[4] Section 13960 states that "[a]s used in this article," a victim is a "person who sustains injury or death as a direct result of a crime," and

---

[3]In relevant part, section 13967, subdivision (c) provides:

"In cases in which a victim has suffered *economic loss* as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. If a defendant has been convicted of a felony violation of Section 288 of the Penal Code, restitution to the victim may be ordered whether or not the defendant is denied probation. Notwithstanding subdivision (a), restitution shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. A restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and shall be enforceable as a civil judgment. The making of a restitution order pursuant to this subdivision shall not affect the right of a victim to recovery from the Restitution Fund in the manner provided elsewhere, except to the extent that restitution is actually collected pursuant to the order. Restitution collected pursuant to this subdivision shall be credited to any other judgments for the same losses obtained by the victim against the defendant arising out of the crime for which the defendant was convicted." (Italics added.)

[4]When defendant committed the offenses giving rise to the restitution order in this case, section 13960 provided in relevant part:

"As used in this article:

"(a) 'Victim' means any of the following residents of the State of California, or military personnel and their families stationed in California:

"(1) A person who sustains injury or death as a direct result of a crime.

"(2) Anyone legally dependent for support upon a person who sustains injury or death as a direct result of a crime.

"(3) Any member of the family of a victim specified by paragraph (1) or any person in close relationship to such a victim, if that member or person was present during the actual commission of the crime, or any member or person herein described whose treatment or

further states that a victim does not suffer an "injury" unless he or she suffers a "physical injury."[5]

Both section 13960 and section 13967 appear in the same article of the Government Code. (Tit. 2, div. 3, pt. 4, ch. 5, art. I; hereafter referred to as article 1.) Because of that placement, defendant argues that section 13960's narrow definition of "victim" governs that term as used in subdivision (c) of section 13967. Thus, defendant contends, to qualify under section 13967, subdivision (c) as a "victim" who "suffered economic loss," a person must be both a "victim" (one who suffered physical injury) *and* a person who "suffered economic loss." We disagree.

In construing a statute, our principal task is to ascertain the intent of the Legislature. (*Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 989 [9 Cal.Rptr.2d 102, 831 P.2d 327].) We do so by first turning to the words themselves, giving them their ordinary meaning. (*People* v. *Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843]; *People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) Of course, " ' "language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." ' " (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].) In such circumstances, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115,

---

presence during treatment of the victim is medically required for the successful treatment of the victim.

"(4) Any member of the family of a person who sustains injury or death as a direct result of a crime when the family member has incurred emotional injury as a result of the crime. Pecuniary loss to these victims shall be limited to only medical expenses, mental health counseling expenses, or both, of which the maximum award shall not exceed ten thousand dollars ($10,000).

"(5) In the event of a death caused by a crime, any individual who legally assumes the obligation, or who voluntarily pays the medical or burial expenses incurred as a direct result thereof.

"(b) 'Injury' includes physical or emotional injury, or both. However, this article does not apply to emotional injury unless such an injury is incurred by a person who also sustains physical injury or threat of personal injury or by a member or person as defined in paragraph (3) or (4) of subdivision (a). For purposes of this article, a victim of a crime committed in violation of Section 261, 270, 270a, 270c, 271, 272, 273a, 273b, 273d, 285, 286, 288, 288.1, 288a, or 289 of the Penal Code, who sustains emotional injury is presumed to have sustained physical injury."

[5]Although section 13960 includes within its definition of "victim" persons who have various close relationships to a person who suffered a physical injury (see subd. (a)(2)-(5), and includes within its definition of "injury" those who suffered emotional injury as a result of an actual or threatened physical injury (see subd. (b)), this has no bearing on the issue before us. For convenience, the remainder of this opinion will omit reference to the fact that the statute also defines such persons as victims.

755 P.2d 299]; see also *Consumer Product Safety Com'n* v. *GTE Sylvania, Inc.* (1980) 447 U.S. 102, 108 [64 L.Ed.2d 766, 772, 100 S.Ct. 2051] [statutory language is conclusive "[a]bsent a clearly expressed legislative intention to the contrary"].)

 Defendant argues that when section 13960 and subdivision (c) of section 13967 are read together, their "plain meaning" requires that the term "victim" contained in section 13967, subdivision (c) be defined as set forth in section 13960, that is, as a person who has suffered a physical injury. As we just noted, the plain meaning of a statute should not be followed when to do so would lead to "absurd results." (*People* v. *Morris, supra,* 46 Cal.3d at p. 15; see also *People* v. *Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420]; *Younger* v. *Superior Court, supra,* 21 Cal.3d at p. 113.) Here, as we shall explain, the voters, when they added article I, section 28, subdivision (b) to the California Constitution, placed the Legislature under a constitutional mandate to enact legislation directing trial courts to order defendants found guilty of criminal acts to pay restitution to *all* victims, not simply those who suffered a physical injury. If we were to conclude that the Legislature knowingly disregarded this constitutional imperative, it would indeed be an "absurd" construction of the statute, and one we need not adopt. The history of section 13967 shows that the Legislature intended to implement, not violate, its constitutional mandate.

## II

The history of section 13967 begins in 1965. In that year, the Legislature created a special fund to provide compensation to victims of violent crimes. (Stats. 1965, ch. 1549, pp. 3641-3642; see also Stats. 1967, ch. 1546, pp. 3707-3709.) In 1973, the Legislature substantially revised the statutory scheme. (Stats. 1973, ch. 1144, pp. 2348-2352.) As revised, the statutory scheme provided, among other things, for financial assistance from the restitution fund for medical expenses and lost wages to victims of violent crimes, with a maximum of $10,000 in each category. (§ 13965.) A new statute, section 13967, authorized a court-ordered fine of up to $10,000, to be paid into the restitution fund by any criminal defendant convicted of a violent crime that caused injury or death to the victim. The Legislature placed all of the provisions controlling the creation and administration of the restitution fund in article 1. Because the fund provided compensation only to victims of *violent* crimes, section 13960 defined the term "victim," for purposes of article 1, as one injured as a direct result of a violent crime.

In 1982, the voters of California passed Proposition 8, an initiative to reform the state's criminal justice system. The initiative included this

amendment to the California Constitution: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Cal. Const., art. I, § 28, subd. (b).) The amendment directed the Legislature to adopt implementing legislation. (*Ibid.*) The Legislature did so.

The new legislation, enacted in 1983, included: Penal Code section 1203.04, requiring trial courts to order restitution from defendants convicted of crimes and placed on probation; Welfare and Institutions Code section 729.6, imposing a similar requirement in all juvenile delinquency matters; Penal Code section 1202.4, requiring all persons convicted of a felony to pay a "restitution fine" of up to $10,000, payable into the restitution fund for victims of violent crime; and several laws designed to aid victims filing civil actions against persons convicted of crimes (§ 26820.4, subd. (b); former § 72055, subd. (b) [now subd. (c)]; Code Civ. Proc., §§ 37, 340.3 & 1021.4; Pen. Code, § 1191.2; former Welf. & Inst. Code, § 656.2 [see now Pen. Code, § 679.02]). The Legislature also amended section 13967 to provide that in every criminal case a person convicted of a crime must pay "restitution in the form of a penalty assessment" to the state and the county in which the offense was committed. Curiously, the Legislature did not enact legislation either requiring or authorizing trial courts to order defendants who were convicted of crimes but were *not* given probation to make restitution to any of the victims of their crimes. In such cases, victims of violent crimes had an indirect restitutionary remedy through the restitution fund in article 1, but victims of nonviolent crimes had no recourse other than to sue the person who committed the crime.

This legislative omission was noted by the Court of Appeal in *People* v. *Downing* (1985) 174 Cal.App.3d 667 [220 Cal.Rptr. 225]. In *Downing*, the defendant, convicted of grand theft, was sentenced to prison and ordered to pay restitution of $400,000 to the victim. The Court of Appeal reversed the restitution order as statutorily unauthorized, and observed in passing that the Legislature had not adequately complied with the constitutional mandate, enunciated in article I, section 28, subdivision (b), to enact legislation directing trial courts to order restitution to the victim in all criminal cases. The court said: "[W]e question whether the Legislature fully implemented the constitutional mandate . . . . The electorate gave a clear directive requiring restitution to be ordered in every case involving a victim absent extraordinary reasons. We doubt it anticipated the current statutes, which in

some cases still leave the victims to individually bear the costs and endure the rigors of seeking civil judgments." (174 Cal.App.3d at p. 672.)

To remedy this legislative oversight, Senator Gary Hart in 1986 proposed to add a new statute, Penal Code section 1202b, that would require trial courts to order restitution "to the victim" (if the crime had a victim) in "any case where a person is convicted of a crime and probation is denied." (Sen. Bill No. 2404 (1985-1986 Reg. Sess.; hereafter SB 2404).) Because the new statute was to be in the Penal Code, it would be unaffected by the definition of the term "victim" in article 1, which appears in the Government Code, and contains the definition at issue in this case.

After the Senate's adoption of SB 2404, the bill moved to the Assembly. There it was changed to provide for an amendment to section 13967 of the Government Code, rather than an addition of a new statute to the Penal Code, as originally contemplated.[6] The proposed amendment to Government Code section 13967 retained those portions of the statute authorizing the imposition of a fine and penalty assessment. (See pp. 1072-1073, *ante.*) It added, however, subdivision (c), stating that when "a victim has suffered *economic* loss as a result of the defendant's criminal conduct, and the defendant is denied probation, . . . the court shall order restitution to be paid to the victim." (Italics added.)

The Legislative Counsel's Digest explained SB 2404's purpose as follows: "Existing law provides that in every case in which a person is convicted of a crime and is granted probation the court is required to order as a condition of probation that he or she make restitution to the victim, if the crime involved a victim, or to the Restitution Fund, if the crime did not involve a victim. Existing law also provides that in any case in which a defendant is convicted of a felony the court is required to order the defendant to pay a restitution fine, which is deposited into the Restitution Fund, as specified. [¶] This bill would provide that in cases in which a victim has suffered *economic* loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court is required to order restitution to be paid to the victim, as specified." (Legis. Counsel's Dig., Sen. Bill No. 2404, 4 Stats. 1986 (Reg. Sess.) Summary Dig., p. 557, italics added.)

On September 30, 1986, SB 2404, as amended, was signed into law. (Stats. 1986, ch. 1438, pp. 5140-5141.) Although there have been several later alterations to section 13967, they are not relevant here in determining the meaning of the term "victim" as used in that section.

---

[6] The legislative history sheds no light on the reason for this change.

### III

We now turn to the issue before us: whether the Legislature intended the word "victim," as used in subdivision (c) of section 13967, to include anyone who has not suffered physical injury but has sustained economic loss resulting from a defendant's criminal acts. For reasons that follow, we conclude that the Legislature did so intend.

First and most important, as we have seen, the Legislature is under an express constitutional mandate (Cal. Const., art. I, § 28, subd. (b)) to enact laws requiring trial courts to order restitution "in every case . . . in which a crime victim suffers a loss . . . ." This constitutional requirement makes no distinction between losses that result from physical injury and losses that are purely economic. Thus, unless the Legislature chose to ignore the obligation that the voters of California imposed on it through the passage of article I, section 28, subdivision (b) of the Constitution, it must have intended that section 13967 protect all crime victims, regardless of the nature of their loss.

Second, the legislative history of section 13967, subdivision (c) shows that its purpose was to plug the gap that remained after 1983, when, as described earlier (*ante*, p. 1073), the Legislature attempted to comply with the constitutional mandate that it enact legislation requiring restitution in every criminal case. As we mentioned earlier, the bill creating section 13967, subdivision (c), SB 2404, was proposed shortly after the Court of Appeal in *People* v. *Downing, supra,* 174 Cal.App.3d 667, pointed out that despite this constitutional requirement, when victims of crime suffered purely economic loss and the defendant who inflicted the loss was sentenced to prison, "the victims' only avenue of relief for restitution is by civil remedy," and questioned whether the Legislature had fully implemented the electorate's "clear directive requiring restitution to be ordered in every case involving a victim absent extraordinary reasons." (*Id.* at p. 672.)

A Senate Floor Analysis of SB 2404, prepared after the bill had been amended by the Assembly, demonstrates that the Legislature intended that SB 2404 correct the anomaly in the statutory scheme noted by the court in *People* v. *Downing, supra,* 174 Cal.App.3d 667, by authorizing trial courts to order defendants not given probation to pay restitution to all of their victims, including those who suffer purely economic injury. The analysis explained the purpose of SB 2404 as follows: "[T]he courts recently declared that the Legislature has yet to implement fully Proposition 8 because it has not provided the courts with authority to order restitution in cases where the defendant is *sentenced to prison.* (*People vs Downing* (1985)) [¶] . . . [T]his leaves the anomalous result that the most serious offenders in the system

. . . cannot be compelled to make restitution to their victims." (Sen. Rules Com., Floor Analysis Sen. Bill No. 2404 (1985-1986 Reg. Sess.), as amended Aug. 21, 1986; italics in original.)

The Legislative Counsel's analysis of SB 2404, which we quoted in full at page 1074, *ante*, provides further support for our conclusion that the Legislature intended it to authorize trial courts to order restitution to all victims, not just those who suffered physical injury. That analysis specifically noted that SB 2404 was intended to apply "in cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct." (Legis. Counsel's Dig., Sen. Bill No. 2404, 4 Stats. 1986 (Reg. Sess.) Summary Dig., p. 557.)

To support his claim that the term "victim" as used in section 13967 must be given the definition of that term set forth in section 13960, that is, one who suffered a physical injury as a result of the defendant's criminal actions, defendant relies on section 13960.5. His reliance is unfounded.

Section 13960 defines "victim," as the term is used in article 1, as including only "residents of the State of California, or military personnel and their families stationed in California." In 1985, the Legislature enacted section 13960.5, which states that notwithstanding section 13960, whenever federal funds are available to the state for the compensation of victims of crime, the term "victim" also includes "nonresidents of this state who suffer pecuniary losses as a direct result of criminal acts occurring within this state."

Defendant asserts that section 13960.5 shows that the Legislature "recognized the limitations on the word 'victim' which had been made applicable throughout [article 1] by section 13960," and that it "knows how to phrase a statute so as to exempt it from the definition of 'victim' set forth in section 13960." Defendant argues that the Legislature's failure to explicitly create such an exemption when it created section 13967, subdivision (c) demonstrates that it intended the words in that subdivision, including the term "victim," to be defined as set forth in section 13960.

Defendant's argument is not persuasive. As we have explained, the legislative history of section 13967, subdivision (c) shows that the Legislature did not contemplate that the statute would be subject to section 13960's limited definition of the term "victim." Thus, there was no reason for the Legislature to create a special exemption of the type set forth in section 13960.5. Its failure to create such an exemption does not demonstrate that the Legislature intended the term "victim," as used in section 13967, subdivision (c), to refer only to victims who suffer physical injury.

Defendant's construction of section 13967, subdivision (c) as authorizing trial courts to order restitution for economic loss only to crime victims who suffer physical injury *and* economic loss would lead to arbitrary and capricious results. Under defendant's view of the statute, if a thief grabbed a purse from a woman without injuring her, the victim could not receive restitution for the money stolen, but if the thief bruised the victim's arm in the process, the victim could receive restitution for the loss of the money. We can think of no explanation why the Legislature could have desired such an unlikely result, and defendant advances none. (See *People* v. *Morris*, *supra*, 46 Cal.3d at p. 15.)

CONCLUSION

Through the passage of Proposition 8, an initiative to reform the criminal justice system, the voters of the State of California amended the state Constitution to require the enactment of legislation providing that, unless "compelling and extraordinary reasons" exist, restitution be ordered from any person convicted of a crime "in every case . . . in which a crime victim suffers a loss . . . ." (Cal. Const., art. I, § 28, subd. (b).) Initial legislative efforts to comply with this constitutional mandate were incomplete; the Legislature filled the gap by enacting section 13967, subdivision (c), which requires a trial court to order restitution in any criminal case in which a defendant is denied probation and in which the victim has suffered economic loss, irrespective of whether the defendant inflicted physical injury on the victim.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., and Arabian, J., and Baxter, J., and George, J., concurred.

**PANELLI, J.,** Dissenting.—

I.

Although I would like to agree with the majority's interpretation of Government Code section 13967, subdivision (c),[1] I cannot. Accordingly, I dissent from the majority opinion, because I believe that the majority ignores basic principles of statutory construction in order to reach a result it deems more desirable. While the statutory scheme implementing California's constitutional right of victims of crimes to receive restitution may be incomplete, it is the responsibility of the Legislature to remedy defective legislation, not this court. It is unseemly for this court to achieve the desired result by disregarding express statutory language.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

## II.

As the majority implicitly recognizes, article I, section 28, subdivision (b) is not a self-executing constitutional provision. (*People* v. *Vega-Hernandez* (1986) 179 Cal.App.3d 1084 [225 Cal.Rptr. 209].) In the absence of implementing legislation, this constitutional right remains inoperative. (*Spinney* v. *Griffith* (1893) 98 Cal. 149, 151-152 [32 P. 974] [mechanics' liens]; *Borchers Bros.* v. *Buckeye Incubator Co.* (1963) 59 Cal.2d 234, 238 [28 Cal.Rptr. 697, 379 P.2d 1] [same]; cf. *People* v. *Vega-Hernandez, supra,* 179 Cal.App.3d at p. 1099 [no support in Constitution for restitution order beyond the scope of the implementing statute].) In a situation where the implementing legislation does not match the breadth of the constitutional provision, our duty is limited to "declar[ing] the law as we find it." (*Spinney* v. *Griffith, supra,* 98 Cal. at p. 154.) To accomplish this task, we apply the well-recognized rules of statutory construction to the implementing legislation.

In my view, the majority opinion founders on the express definition of "victim" set forth in the statutory scheme. Section 13967, subdivision (c) provides that the trial court sentencing a criminal defendant to prison shall, unless there are "clear and compelling" reasons not to do so, order the defendant to pay full restitution to a "victim," who "has suffered economic loss as a result of defendant's criminal conduct. . . ." The term "victim," for purposes of the article of which section 13967 is a part,[2] is in turn expressly defined in pertinent part as "[a] person who sustains *injury* or death as a direct result of a crime." (§ 13960, subd. (a)(1), italics added.) The term "injury" is then defined to include "physical or emotional injury, or both." (§ 13960, subd. (b.) Moreover, "crime" is specifically defined as a "crime or public offense as defined in Section 15 of the Penal Code which results in *injury* to a resident of this state . . . ." (§ 13960, subd. (c), italics added.) Thus, the statutes as written unambiguously prescribe that, absent physical or emotional injury, the victim of a crime is not a "victim" entitled to restitution for economic loss within the meaning of section 13960, subdivision (c). (Cf. *People* v. *Miller* (1989) 216 Cal.App.3d 758, 762-763 [265 Cal.Rptr. 77] [Napa Special Investigations Bureau not within the definition of "victim" in § 13960, subd. (a) and thus not a victim entitled to restitution under § 13967, subd. (c)]; *People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 999-1000 [262 Cal.Rptr. 141] [insurance company not a "victim"]; *People* v. *Williams* (1989) 207 Cal.App.3d 1520, 1523-1524 [255 Cal.Rptr. 778] [same].)

I further observe that the Legislature has demonstrated that it is aware that the definition of "victim" in section 13960, subdivision (a) applies throughout article 1. In drafting section 13960.5, which is also found in article 1, the

---

[2] Both section 13960 and 13967 appear in title 2, division 3, part 4, chapter 5, article 1 of the Government Code (article 1).

Legislature specifically provided: "*Notwithstanding Section 13960, 'victim' shall also include* nonresidents of this state who suffer pecuniary losses as a direct result of criminal acts occurring within this state." (Italics added.) Since the Legislature did not include a similar exception in section 13967, this court should not in the course of interpreting the statute effectively add such language. (*Craven* v. *Crout* (1985) 163 Cal.App.3d 779, 783 [209 Cal.Rptr. 649] ["Where a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent."].)

Resort to the statutory language is all that is required to decide the present case. As we have repeatedly recognized, "[t]he statutory language . . . is the best indicator of legislative intent." (E.g., *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) As a corollary, "[i]t is bedrock law that if 'the law-maker gives us an express definition, we must take it as we find it . . . .' " (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 804 [268 Cal.Rptr. 753, 789 P.2d 934], quoting *Bird* v. *Dennison* (1857) 7 Cal. 297, 307; see also *People* v. *Dillon* (1983) 34 Cal.3d 441, 468 [194 Cal.Rptr. 390, 668 P.2d 697] [statutory definition is "ordinarily binding on the courts"]; *Application of Monrovia Evening Post* (1926) 199 Cal. 263, 269-270 [248 P. 1017] [statutory definition "binding on the courts"].) Contrary to the majority, I would eschew the use of extrinsic aids and follow these established rules of statutory interpretation to conclude that the express definition of "victim" provided by the Legislature is binding on this court.

The majority justifies the use of legislative history as an interpretive aid on the ground that to apply the statutory language as written would lead an absurd result, i.e., the conclusion that the Legislature "knowingly disregarded" the constitutional mandate of article I, section 28, subdivision (b) to enact legislation directing the trial courts to order defendants found guilty of criminal acts to pay restitution to all victims of crimes. (Maj. opn., *ante*, at p. 1072.) I disagree with the majority's conclusion.

The maxim that a statute should be construed to avoid absurd results is not implicated in this case. The nature of a constitutional provision that is not self-executing undermines the majority's reasoning. The fact that our state Constitution recognizes an expansive right to restitution does not mean that to date the Legislature has provided a statutory remedy coextensive with the constitutional mandate or that the statutes implementing a less expansive remedy are rendered absurd because they are not comprehensive. Moreover, we are not compelled to attribute the fact that comprehensive legislation has not been enacted to any desire by the Legislature to ignore or avoid its responsibilities. Failure to provide for direct restitution from imprisoned

defendants to their victims who have suffered solely economic damages may simply be the product of legislative oversight. (Cf. *People* v. *Downing* (1985) 174 Cal.App.3d 667, 672 [220 Cal.Rptr. 225] [statutes failed to fully implement constitutional mandate to provide for restitution].) In my view, the majority is not warranted in invoking the maxim of "absurdity" to justify ignoring explicit statutory language, even if it does so to achieve what it perceives to be a superior result. Instead, the unambiguous statutory language chosen by the Legislature should be given effect.

Because the definition of "victim" provided by the Legislature is clear and unambiguous, there is simply no need to resort to extrinsic aids to interpretation as the majority does. (E.g., *Delaney* v. *Superior Court, supra,* 50 Cal.3d 785, 804.) However, I observe that, even if a review of legislative history was appropriate, it would not alter my views. The legislative history is silent regarding how "victim" should be defined for purposes of section 13967, subdivision (c). As the majority correctly observes, the legislative history sheds no light on the decision to place the statutory language that became section 13967, subdivision (c) in article 1. (Maj. opn., *ante,* at p. 1074, fn. 6.) The Legislature, however, is presumed to have been aware of existing laws, including section 13960, which expressly provides that its definitions are applicable throughout article 1. (See *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11 [210 Cal.Rptr. 631, 694 P.2d 744].)

Moreover, the fact that the addition of subdivision (c) to section 13967 was a response to the decision in *People* v. *Downing, supra,* 174 Cal.App.3d 667, does not lead to a contrary conclusion. In *Downing,* the court held restitution could not be ordered when a defendant was sentenced to prison and commented that the restitution fund was of no assistance to victims of property offenses. While *Downing* was an impetus to the legislation considered here, the legislative history supports the conclusion that the Legislature was primarily concerned with remedying the anomaly that restitution orders could be entered against paroled defendants, but not imprisoned defendants. (Legis. Counsel's Dig., Sen Bill No. 2404, 4 Stats. 1986 (Reg. Sess.) Summary Dig., p. 557; Sen. Rules Com., Floor Analysis, Sen. Bill No. 2404 (1985-1986 Reg. Sess.) as amended Aug. 21, 1986; Sen. Com. on Judiciary, Bill Dig., Sen. Bill No. 2404 (1985-1986 Reg. Sess.); Assem. Com. on Public Safety, Bill Dig., Sen. Bill No. 2404 (1985-1986 Reg. Sess.); Letter from Attorney General to Hon. Bill Lockyer (Apr. 9, 1986).)

The Legislative history is inconclusive at best and should not defeat the clear definition of "victim" applicable throughout article 1, including section 13967, subdivision (c). (See *Delaney* v. *Superior Court, supra,* 50 Cal.3d at p. 804.)

### III.

Because the Legislature has provided an express and unambiguous definition of "victim" in section 13960, subdivision (a) that is applicable to section 13967, subdivision (c), I conclude that, in order to be eligible to receive direct restitution for economic damages caused by an imprisoned criminal defendant, the victim of the crime must have suffered physical or emotional injury. Therefore, I would reverse the judgment of the Court of Appeal.

Mosk, J., concurred.