Filed 12/2/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re ANDRE J. PERDUE,<br><br>    on Habeas Corpus. | 2d Civil No. B250221<br>(Super. Ct. No. 2007024357)<br>(Ventura County) |

Andre J. Perdue was convicted by a jury of violating former Penal Code section 12370, subdivision (a) (12370(a)), which proscribed the possession of body armor by a person who has been convicted of a violent felony.[1]  The trial court imposed the upper term of three years and doubled it to six years because of a prior strike conviction.

Perdue filed a petition for a writ of habeas corpus in the California Supreme Court. The Supreme Court ordered the Secretary of the Department of Corrections and Rehabilitation "to show cause before [this court] . . . why petitioner is not entitled to relief based on petitioner's underlying allegation that former Penal Code section 12370, subdivision (a) . . . is void for vagueness."

Petitioner contends that former section 12370(a) is "unconstitutionally vague as applied to him" because he "did not know - and indeed, was incapable of determining - that the bulletproof vest in his possession met the technical requirements" of the statute. Petitioner argues that the statutory definition of "body armor" is so complex that it "does not provide a person of ordinary intelligence with a reasonable opportunity to determine" which vests are prohibited by the statute.

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

We conclude that contrary to petitioner's express contention, former section 12370(a) is not void for vagueness "as applied" to him. We therefore deny the petition.

*Facts*

In March 2007 petitioner gave a deputy sheriff permission to search his vehicle. The deputy found a bulletproof vest in the trunk. Petitioner told another deputy that he was the owner of the bulletproof vest and a convicted felon. He said that he had purchased it, together with a handgun, from a person named "Cesar." Petitioner referred to the vest as "his bulletproof vest." Petitioner's girlfriend testified that "[h]e had made several comments that because of his prior convictions, he wasn't allowed to be around any weapons or body armor."

The parties stipulated that petitioner had four prior felony convictions, including "two counts of robbery in 1998, both violent felony convictions." An expert on body armor opined that the vest recovered from petitioner's vehicle qualified as "body armor" within the meaning of former section 12370 and section 942 of Title 11 of the California Code of Regulations. The expert testified that the vest had "an American Body Armor label."

*The Statute and The Regulation*

Former section 12370(a) provided in relevant part: "Any person who has been convicted of a violent felony . . . who purchases, owns, or possesses body armor as defined by Section 942 of Title 11 of the California Code of Regulations . . . is guilty of a felony . . . ." In 2010 former section 12370 was amended to add subdivision (f), which defined "body armor" without reference to the California Code of Regulations. Subdivision (f) provided: " '[B]ody armor' means any bullet-resistant material intended to provide ballistic and trauma protection for the person wearing the body armor." (Stats. 2010, ch. 21, § 1, eff. 6/2/2010.) Effective January 1, 2012, former section 12370 was repealed. (Stats.2010, ch. 711, §§ 4, 10.) The subdivision (f) definition of body armor is continued in current sections 16288 and 31360, which replaced former section 12370.

In 2009 petitioner was convicted of a body armor offense that had been committed in 2007. Thus, we are concerned only with former section 12370 before the 2010

2

amendment that added subdivision (f).  All further references to former section 12370 refer to the pre-amendment version.

Former section 12370(a) defined "body armor" by reference to the definition of that term in section 942 of Title 11 of the California Code of Regulations (Title 11).  Section 942, subdivision (e) provides in relevant part: " 'Body armor' is popularly called a 'bulletproof vest'.  For purposes of these regulations, 'body armor' means those parts of a complete armor that provide ballistic resistance to the penetration of the test ammunition for which a complete armor is certified."

Section 941 of Title 11 requires the Department of Justice (Department) to test body armor submitted by manufacturers for certification.  If the Department certifies that the body armor meets the minimum requirements of Title 11, the body army may be purchased for use by state law enforcement officers.  Section 945, subdivision (e) of Title 11 provides: "Body armor shall protect against the standard test rounds specified in Section 946 of this title.  It shall also provide protection against the lesser threats listed in Table 1 for Type I [body armor], such as 12 gauge 00 buckshot, 22 caliber Long Rifle, High Velocity, 38 Special, and most other factory loads in 357 Magnum and 9 mm rounds."  Section 946 specifies the test ammunition for different types of armor, the type of firearm to be used for firing test rounds, and the "[b]acking material for ballistics tests."  (Title 11, § 946, subds. (a), (b), (e).)  Additional regulations require complex, technical testing procedures.  (*Id*., §§ 947-949, 951-953.)  To be certified, "[e]ach armor type shall evidence no sign of penetration after the number of fair hits, by the rounds specified, for each armor type as specified in Table 2, when tested dry (Section 951)."  (*Id*., § 953, subd. (a).)  " 'Penetration' is complete perforation of an armor test sample by a test bullet or bullet fragment, or fragments of the armor evidenced by the presence of the bullet or fragment in the backing material, or by a hole that passes through a ballistic panel or vest."  (*Id*., § 942, subd. (j).)

3

*Expert Testimony and Body Armor*

In *People v. Chapple* (2006) 138 Cal.App.4th 540, the defendant was held to answer for possession of body armor in violation of former section 12370(a). The defendant successfully moved to set aside the information "on the ground that opinion evidence offered by a police officer was inadmissible, and, as a consequence, there was insufficient evidence that the item the police seized was body armor as defined in section 12370(a)." (*Id*., at p. 543.) The police officer, who was not an expert on body armor, testified that during a search of the defendant's apartment he had found "a body armor vest, bullet proof vest." (*Id*., at p. 544.)

The appellate court affirmed the superior court's order setting aside the information. The appellate court reasoned: "The crime charged consists of elements incapable of determination by the trier of fact without the assistance of an expert. The body armor proscribed by section 12370(a) must be certified based on its 'ballistic resistance to the penetration of . . . test ammunition.' (Cal.Code Regs., tit. 11, § 942, subd. (e).) Clearly, whether or not the vest seized in this case met such certification standards involved concepts beyond common experience, and, thus, was a proper subject for expert testimony, but not for a lay opinion." (*People v. Chapple*, *supra*, 138 Cal.App.4th at pp. 548-549, fn. omitted.)

*Chapple* makes clear that a protective vest's compliance with Title 11's certification standards is an element of a violation of former section 12370(a). This interpretation of the statute is consistent with the legislative intent expressed in a senate floor analysis of the bill that added section 12370 to the Penal Code: "For purposes of the regulations [Title 11] *and this bill*, 'body armor' means those parts of a complete armor that provide ballistic resistance to the penetration of the test ammunition for which a complete armor is certified." (Sen. Rules Com., Floor Analysis of Assem. Bill No. 1707 (1997-1998 Reg. Sess.) July 15, 1998, italics added.) A floor analysis of a bill may be considered in determining legislative intent. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1075 [Senate Floor Analysis "demonstrates that the Legislature intended" that the bill "correct [an] anomaly in the statutory scheme"].)

4

*Chapple* also makes clear that only an expert is qualified to determine whether a protective vest meets the technical specifications of body armor within the meaning of former section 12370(a).

*The Void-for-Vagueness Doctrine*

The void-for-vagueness doctrine is based on the due process clause, which "requires . . . some level of definiteness in criminal statutes. [Citation.]" (*Burg v. Municipal Court* (1983) 35 Cal.3d 257, 269 (*Burg*).) "The basic premise of the void-for-vagueness doctrine is that '[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.' [Citation.]" (*People v. McKay* (2002) 27 Cal.4th 601, 634.) Thus, " 'a criminal statute must " 'be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt.' " [Citations.]' [Citation.]" (*People v. Morgan* (2007) 42 Cal.4th 593, 605.)

" ' "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." ' [Citations.]" (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567-568.)

"The starting point of our analysis is 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' [Citation.]" (*Williams v. Garcetti*, *supra*, 5 Cal.4th at p. 568.)

5

"Vagueness challenges to statutes [such as former section 12370(a)] not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis. [Citations.]" (*Maynard v. Cartwright* (1988) 486 U.S. 356, 361 [108 S.Ct. 1853, 100 L.Ed.2d 372].) " 'The rule is well established . . . that one will not be heard to attack a statute on [vagueness] grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations.' [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1095.) Petitioner recognizes this limitation on a vagueness challenges. He contends that he "is entitled to habeas relief because he was convicted under a statute that is unconstitutionally vague as applied to the facts of his case."

### *Former Section 12370(a) Is Not Void for Vagueness*

Based on our Supreme Court Court's decision in *Burg*, *supra*, 35 Cal.3d 257, we conclude that former section 12370(a) is not void for vagueness as applied to petitioner. Burg was convicted of violating former Vehicle Code section 23152, subdivision (b), which prohibited driving a vehicle with a blood-alcohol level of .10 percent or more.[2] Burg claimed that former section 23152, subdivision (b) was void for vagueness. His theory was "that the statute fails to notify potential violators of the condition it proscribes, because it is impossible for a person to determine by means of his senses whether his blood-alcohol level is a 'legal' 0.09 percent or an 'illegal' 0.10 percent." (*Id*., at p. 270.)

Our Supreme Court noted that due process requires a criminal statute to be definite enough to satisfy two components. First, the statute must provide a "standard of conduct for those whose activities are proscribed." (*Burg*, *supra*, 35 Cal.3d at p. 269.) Second, it must provide a "standard for police enforcement and for ascertainment of guilt." (**Ibid**.) As to the second component, the court concluded that "the statute could not be more

---

[2] In 1989 the legislature lowered the blood-alcohol level to .08 percent. (Stats.1989, ch. 1114, § 27.)

6

precise as a standard for law enforcement. [Citation.] . . . Indeed, the very precision of the standard assures the statute's validity in this respect." (*Id*., at p. 270.)

As to "the 'fair notice' component of the void-for-vagueness doctrine," the court observed: "[Burg's] theory would render the void-for-vagueness doctrine internally inconsistent: the notice requirement would compete with the need to provide precise standards for law enforcement. When, as in the present case, a statutory standard requires scientific measurement, the very factor that assures due process under the 'standards' [for law enforcement] component would violate due process under the 'notice' component." (*Burg*, *supra*, 35 Cal.3d at p. 270.) The court pointed out that "[d]ue process requires only 'fair notice,' not 'actual notice.' " (*Id*., at p. 270, fn. 17.) " 'Fair notice' requires only that a violation be described with a ' "reasonable degree of certainty" ' [citation] so that 'ordinary people can understand what conduct is prohibited.' [Citation.] The notice provided must be such that the prosecution does not 'trap the innocent' without 'fair warning.' [Citation.]" (*Id*., at pp. 270-271.)

Our Supreme Court continued: "One who drives a vehicle after having ingested sufficient alcohol to approach or exceed the level proscribed is neither 'innocent' . . . nor is he without 'fair warning.' His behavior is not 'innocent' because one who drives with a blood-alcohol content above 0.05 percent is in jeopardy of violating section 23152, subdivision (a), i.e., driving while under the influence. [Citation.] . . . It is difficult to sympathize with an 'unsuspecting' defendant who did not know if he could take a last sip without crossing the line, but who decided to do so anyway. [¶] The very fact that he has consumed a quantity of alcohol should notify a person of ordinary intelligence that he is in jeopardy of violating the statute. [Citations.] . . . [T]his factor alone sustains our determination that the statute provides adequate warning to potential violators . . . ." (*Burg*, *supra*, 35 Cal.3d at p. 271, fn. omitted.)

Like former section 23152, subdivision (b), former section 12370(a) satisfies the "fair notice" component of due process. A person such as petitioner who knowingly acquires a bulletproof vest after having been convicted of a violent felony "is neither 'innocent' . . . nor is he without 'fair warning' " if the vest turns out to be proscribed "body

7

armor." (*Burg*, *supra*, 35 Cal.3d at p. 271.) Just as a person who has consumed alcohol is in jeopardy of violating Vehicle Code section 23152, subdivision (b) if he drives a vehicle, a person who has been convicted of a violent felony is in jeopardy of violating former section 12370(a) if he knowingly acquires a bulletproof vest. The text of the latter statute and section 942, subdivision (e) of Title 11 give him fair warning that his acquisition of the vest may subject him to criminal liability. Indeed, section 942, subdivision (e) provides that " '[b]ody armor' is popularly called a 'bulletproof vest'."

"It is difficult to sympathize with an 'unsuspecting' defendant who did not know if he could [acquire a particular bulletproof vest] without crossing the line, but who decided to do so anyway. [¶] The very fact that he [has been convicted of a violent felony] should notify a person of ordinary intelligence that he is in jeopardy of violating the statute. [Citations.] . . . [T]his factor alone sustains our determination that the statute provides adequate warning to potential violators . . . ." (*Burg*, *supra*, 35 Cal.3d at p. 271, fn. omitted.)

Thus, if a person who has been convicted of a violent felony knowingly acquires a bulletproof vest and gambles that it is not "body armor" within the meaning of former section 12370(a), he will not be heard to complain that he was denied fair warning if he is later prosecuted for violating the statute. By knowingly acquiring the bulletproof vest, he assumed the risk that it would qualify as "body armor" within the meaning of the statute. (See *Maynard v. Cartwright*, *supra*, 486 U.S. at p. 361 ["Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk"]; *Boyce Motor Lines v. U.S.* (1952) 342 U.S. 337, 340 [72 S.Ct. 329, 96 L.Ed. 367] [it is not "unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line"].) A person who drinks alcohol before driving, as in *Burg*, similarly assumes the risk that his blood-alcohol level will exceed the legal limit.

Like former section 23152, subdivision (b), former section 12370(a) also satisfies the due process component of providing a "standard for police enforcement and for

8

ascertainment of guilt." (*Burg*, *supra*, 35 Cal.3d at p. 269.) As to this component, "the statute could not be more precise as a standard for law enforcement. [Citation.] . . . Indeed, the very precision of the standard assures the statute's validity in this respect." (*Id*., at p. 270.)

We reject petitioner's contention that, "[b]ecause police officers[] charged with enforcing [former] section 12370[] would not be capable of determining whether an item meets the definition of 'body armor,' [former] section 12370 allows arbitrary and discriminatory enforcement." To arrest a person for violating former section 12370(a), a police officer need not "determine" whether the person's protective vest qualifies as "body armor" within the meaning of the statute. An arrest is authorized if the officer has probable cause to believe that the person has been convicted of a violent felony and is in possession of prohibited body armor. (§ 836, subd. (a)(3).) The requisite probable cause exists when, as here, a person convicted of a violent felony is in possession of what "is popularly called a 'bulletproof vest'." (Title 11, § 942, subd. (e).)

Accordingly, "[w]e decline to frustrate the Legislature's clear and legitimate purpose in enacting the statute involved here. [Citations.]" (*Burg*, *supra*, 35 Cal.3d at p. 272.) That purpose was to deter persons convicted of violent felonies from acquiring body armor.

## *Conclusion*

It seems only fair that before a person can be convicted of a crime, he or she should be given "fair notice" that doing the act with the requisite intent is a crime. The legislature gave fair notice to petitioner. Even though he did not read section 12370(a) and Title 11, it is reasonable to infer that petitioner knew that his possession of the "bulletproof vest" was a crime. He told his girlfriend that, because of his prior felony convictions, "he wasn't allowed to be around any . . . body armor." The vest itself had a label that said "body armor." Even if a theoretical case can be made for "vagueness," and we don't believe it can, section 12370(a) was not vague as far as petitioner is concerned.

9

*Disposition*

The petition for a writ of habeas corpus is denied.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

Superior Court County of Ventura

_____

Sean K. Kennedy, Federal Public Defender and Patricia A. Young, Deputy Public Defender, for Petitioner.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, , Supervising Deputy Attorney General, Marc A. Kohm, Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.