Filed 10/5/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SANJOY BANERJEE, | |
| Petitioner, | E076291 |
| v. | (Super.Ct.No. RIF1802535) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of prohibition. David A. Gunn, Judge. Petition granted in part; denied in part.

Law Offices of Greenberg & Greenberg, Daniel L. Greenberg, Philip C. Greenberg and Charles E. Kenyon for Petitioner.

No appearance by Respondent.

Michael A. Hestrin, District Attorney, and Emily R. Hanks, Deputy District Attorney, for Real Party in Interest.

1

## I. INTRODUCTION

Following a preliminary hearing, petitioner Sanjoy Banerjee, a physician, was charged in an information with two counts of presenting a false or fraudulent health care claim to an insurer, a form of insurance fraud (Pen. Code § 550, subd. (a)(6), counts 1-2), and three counts of perjury (Pen. Code, § 118, counts 3-5). The superior court denied Banerjee's motion to dismiss the information as unsupported by reasonable or probable cause. (Pen. Code, § 995, subd. (a)(2)(B).)

Banerjee petitions for a writ of prohibition, directing the superior court to vacate its order denying his Penal Code section 995 motion and to issue an order setting aside the information. (Pen. Code, § 999a.) We issued an order to show cause and an order staying further proceedings on the information, pending our resolution of the merits of Banerjee's petition. The People have filed a return, and Banerjee has filed a traverse.

The People claim the evidence supports a strong suspicion that Banerjee committed two counts of insurance fraud and three counts of perjury, based on his violations of Labor Code section 139.3, subdivision (a) (§ 139.3(a)),[1] between 2014 and 2016. Section 139.3(a) prohibits a physician from referring patients to other persons or entities for specified services, to the extent the services are to be paid pursuant to the workers' compensation system (§ 3200 et seq.), if the physician or his or her immediate family has a "financial interest" with the person or in the entity receiving the referral.

---

[1] Unspecified statutory references are to the Labor Code. References to subdivisions of sections 139.3 and 139.31 are denoted without the word "subdivision" or its abbreviated form. For example, we refer to subdivision (a) of section 139.3 as "section 139.3(a)," rather than as "section 139.3, subdivision (a)," or "§ 139.3, subd. (a)."

Between 2014 and 2016, Banerjee billed a workers' compensation insurer for services he rendered to patients through his professional corporation and through two other legal entities he owned and controlled. The insurance fraud charges are based on Banerjee's 2014-2016 billings to the insurer through the two other entities. The perjury charges are based on three instances in which Banerjee signed doctor's reports, certifying under penalty of perjury that he had not violated "section 139.3."

Banerjee claims the information must be set aside for three reasons. First, he claims the evidence shows he did not violate the referral prohibition of section 139.3(a) because he complied with the written patient disclosure requirement of section 139.3(e). Section 139.3(e) requires a physician who refers a patient to, or who seeks a consultation from, an organization in which the physician has a financial interest to disclose the financial interest to the patient in writing at the time of the referral. Banerjee claims that a physician's compliance with section 139.3(e) excuses the physician's noncompliance with the referral prohibition of section 139.3(a). That is, he claims a physician may refer patients for services specified in section 139.3(a) to a person with whom, or an entity in which, the physician has a financial interest (§ 139.3(a)), as long as the physician discloses the financial interest to the patient in writing at the time of the referral (§ 139.3(e)).

Second, he claims that, even if he did not comply with section 139.3(e), the "physician's office" exception to the referral prohibition of section 139.3(a)—set forth in section 139.31(e)—applies to all of his referrals to his two other legal entities. He observes that he treated all of his patients for all of the services he provided to them at the

3

same office location, and that the physician's office exception of section 139.31(e) does not prohibit a physician from rendering services through separate legal entities. Third, he claims the patient disclosure requirement of section 139.3(e), the referral prohibition of section 139.3(a), and the physician's office exception to the referral prohibition (§ 139.31(e)), are unconstitutionally vague. Thus, he argues, he cannot be criminally prosecuted based on an alleged violation of section 139.3(a).

To date, no published court decision has interpreted sections 139.3 or 139.31. We conclude that a physician's compliance with the disclosure requirement of section 139.3(e) does not excuse the physician's noncompliance with the referral prohibition of section 139.3(a), and that section 139.3(a) and 139.3(e) are neither in conflict nor unconstitutionally vague. To save the physician's office exception (§ 139.31(e)) from an unconstitutionally vague interpretation, we construe the statute as allowing a physician to render services to patients through separate legal entities, including entities in which the physician has a financial interest, provided that the services are rendered within the same "physician's office" or the office of a group practice. (§§ 139.3(b)(5), 139.31(e).)

Our interpretation of section 139.31(e) means that the physician's office exception applies to Banerjee's financially interested "self-referrals" to his two other legal entities. Thus, Banerjee did not violate section 139.3(a) by referring his patients to his two other legal entities. Because Banerjee's alleged violations of section 139.3(a) was the only basis to support the perjury charges, the perjury charges must be dismissed.

Even though the evidence does not show that Banerjee violated section 139.3(a), the evidence supports a strong suspicion that Banerjee specifically intended to present false and fraudulent claims for health care benefits, in violation of Penal Code section 550, subdivision (a)(6), by billing the workers' compensation insurer substantially higher amounts through his two other legal entities, between 2014 and 2016, than he previously and customarily billed the insurer for the same services he formerly rendered through his professional corporation and his former group practice. Thus, we grant the writ as to the perjury charges but deny it as to the insurance fraud charges.

## II. BACKGROUND

A. *The Charges Against Banerjee*

### 1. Insurance Fraud (Counts 1 & 2)

Banerjee is charged in counts 1 and 2 of the information with violating Penal Code section 550, subdivision (a)(6), a form of insurance fraud. (See CALCRIM No. 2000.) The statute makes it a crime to "[k]nowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit." (Pen. Code, § 550, subd. (a)(6).) The elements of the crime are (1) the knowing presentation of a false claim for payment of a health care benefit, (2) with the intent to defraud the recipient. (See *People ex. rel. Government Employees Ins. Co. v. Cruz* (2016) 244 Cal.App.4th 1184, 1193.) Insurance fraud is a specific intent crime; the defendant must specifically intend to defraud a person with a false or fraudulent claim. (*People v. Scofield* (1971) 17 Cal.App.3d 1018, 1025-1026.) The crime is complete upon the presentation of the claim, regardless of whether anyone is defrauded by or anything of value is taken or received in consideration for the

5

claim.  (*People ex. rel. Government Employees Ins. Co. v. Cruz*, *supra*, 244 Cal.App.4th at pp. 1193-1194.)

    2.  <u>Perjury (Counts 3, 4, and 5)</u>

Banerjee is charged in counts 3, 4, and 5 with perjury in violation of Penal Code section 118.  (See CALCRIM No. 2640.)  "In order to lawfully hold a person to answer on the charge of perjury under [Penal Code] section 118, evidence must exist of a 'willful statement, under oath, of any material matter which the witness knows to be false.' " (*Cabe v. Superior Court* (1998) 63 Cal.App.4th 732, 735.)  Perjury is also a specific intent crime.  To commit perjury, the defendant must (1) knowingly make a false statement, and (2) specifically intend that the false statement be made under oath or penalty of perjury.  (*People v. Viniegra* (1982) 130 Cal.App.3d 577, 584-586.)

B.  *Sections 139.3 and 139.31, Overview*

The insurance fraud and perjury charges are based on Banerjee's alleged violations of section 139.3(a) between 2014 and 2016.  To date, no published court decision has interpreted sections 139.3 or 139.31.  The statutes were enacted in 1993 (Stats. 1993, ch. 121, §§  20, 21, eff. July 16, 1993) as part of Assembly Bill No. 110 (1993-1994 Reg. Sess.) (Assembly Bill 110), itself part of a comprehensive package of legislation that reformed our state's workers' compensation laws.  (Historical and Statutory Notes, 42A West's Ann. Ins. Code (2013 ed.) foll. Ins. Code § 675, pp. 234-235.)[2]  Assembly Bill 110 was intended to reduce costs and strengthen conflict of interest

_____

    [2]  Assembly Bill 110 repealed former section 139.3 and reenacted section 139.3 in its current form.  (Stats. 1993, ch. 121, §§ 19-20.)

6

rules in the workers' compensation system. (See Historical and Statutory Notes,

42A West's Ann. Ins. Code, *supra*, foll. Ins. Code § 675 at p. 235.)[3]

Section 139.3(a) makes it unlawful for a physician[4] to refer a person for specified

services, to the extent the services are paid pursuant to our state's workers' compensation

system (see § 139.3(a) [referencing § 3200 et seq.]), "if the physician or his or her

immediate family[5] has a financial interest[6] with the person or in the entity that receives

the referral." (§ 139.3(a).) The statute lists the services that are covered by its

prohibition on financially interested physician referrals: "clinical laboratory, diagnostic

---

**3** Sections 139.3 and 139.31 were most recently amended in 2011. (Stats. 2011, ch. 545, §§ 2, 3, eff. Jan. 1, 2012.)

**4** Section 139.3(b) defines several terms for purposes of sections 139.3 and 139.31. " 'Physician' means a physician defined in Section 3209.3." (§ 139.3(b)(3).) Section 3209.3 defines "physician" as including "physicians and surgeons holding an M.D. or D.O. degree, psychologists, acupuncturists, optometrists, dentists, podiatrists, and chiropractic practitioners licensed by California state law and within the scope of their practice as defined by California State law."

**5** " 'Immediate family' includes the spouses and children of the physician, the parents of the physician, and the spouses of the children of the physician." (§ 139.3 (b)(2).)

**6** Section 139.3(b)(4) defines "a financial interest" as including but not limited to, "any type of ownership , interest, debt. Loan lease compensation, remuneration, discount, rebate, refund, dividend, distribution, subsidy, or other form of direct or indirect payment, whether in money or otherwise, between a licensee and a person or entity to whom the physician refers a person for a good or service specified in subdivision (a). A financial interest also exists if there is an indirect relationship between a physician and the referral recipient, including, but not limited to, an arrangement whereby a physician has an ownership interest in any entity that leases property to the referral recipient. Any financial interest transferred by a physician to, or otherwise established in, any person or entity for the purpose of avoiding the prohibition of this section shall be deemed a financial interest of the physician."

nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy, outpatient surgery[7], diagnostic imaging goods or services[8], or pharmacy goods, whether for treatment or medical-legal purposes."  (§ 139(a).)

A violation of section 139.3(a) is a misdemeanor.  (§ 139.3(g).)  Physicians convicted of violating section 139.3(a) are also subject to disciplinary action by the appropriate licensing board if the licensee physician has committed unprofessional conduct, along with civil penalties of up to $5,000 for each violation.  (*Ibid.*)

Subdivisions (c), (d), (e), and (f) of section 139.3 impose further prohibitions or affirmative obligations on licensees, physicians, insurers, and others, regarding section

---

**7**  "Outpatient surgery includes both of the following:  [¶]  (A) Any procedure performed on an outpatient basis in the operating rooms, ambulatory surgery rooms, endoscopy unites, cardiac catherization laboratories, or other sections of a freestanding ambulatory surgery clinic, whether or not licensed under paragraph (1) of subdivision (b) of Section 1204 of the Health and Safety Code.  [¶]  (B)  The ambulatory surgery itself."  (§ 139.4, subd. (b)(7).)

**8**  " 'Diagnostic imaging' includes, but is not limited to, all X-ray, computed axial tomography magnetic resonance imaging, nuclear medicine, positron emission tomography, mammography, and ultrasound good and services."  (§ 139.3(b)(1).)

139.3(a)'s prohibition on financially interested physician referrals.[9] Violations of section 139.3(c), 139.3(d), 139.3(e), and 139.3(f) are public offenses, punishable by a fine of up to $15,000 and "appropriate disciplinary action." (§ 139.3(g).)

The parties dispute whether the written patient disclosure requirement of section 139.3(e) is an exception to or excuses a physician's noncompliance with the prohibition on financially interested physician referrals under section 139.3(a) and, if so, whether Banerjee complied with section 139.3(e). Section 139.3(e) provides: "A physician who refers to or seeks consultation from an organization in which the physician has a financial interest shall disclose this interest to the patient or if the patient is a minor, to the patient's parents or legal guardian in writing at the time of the referral."

Section 139.31 expressly addresses situations in which "section 139.3" does not apply. Section 139.31(e) provides: "The prohibition of section 139.3 shall not apply to any service for a specific patient that is performed within, or goods that are that are supplied by, a physician's office, or the office of a group practice. . . ."

---

[9] Section 139.3(c)(1) prohibits a "licensee" from entering "into an arrangement or scheme, such as a cross-referral arrangement, that the licensee knows, or should know, has a principle purpose of ensuring referrals by the licensee to a particular entity that, if the licensee directory made referrals to that entity, would be in violation of this section."

Section 139.3(c)(2) makes it "unlawful for a physician to offer, deliver, receive, or accept any rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for a referred evaluation or consultation."

Section 139.3(d) prohibits an "entity" from presenting a claim for payment for a referral prohibited under section 139.3, and section 139.3(f) prohibits "any insurer, self-insurer, or other payor" from paying "a charge or lien for any goods or services resulting from a referral in violation" of section 139.3.

Section 139.3(b)(5) defines "physician's office" for purposes of sections 139.3 and 139.31. "Physician's office" means either "[a]n office of a physician in solo practice" (§ 139.3(b)(5)(A)), or "[a]n office in which the services or goods are personally provided by the physician or by employees in that office, or personally by independent contractors in that office, in accordance with other provisions of law. . . ." (§ 139.3 (b)(5)(B)). All such employees or independent contractors are required to be licensed. (*Ibid.*)

The parties also dispute whether the physician's office exception (§ 139.31(e)) to the prohibition on financially interested physician referrals (§ 139.3(a)) applies to Banerjee's patient referrals. Banerjee claims the physician's office exception applies; thus, he did not violate section 139.3(a) because he only referred his patients for services that he personally performed within his "physician's office" (§139.3(b)(5)), at the same physical location, even though he performed the services through three separate legal entities that he owned and operated from that location. The People maintain that the physician's office exception does not apply to services rendered by a single physician through separate legal entities, even if the services are rendered at the same location.

C. *Preliminary Hearing Evidence*

1. The Operative Complaint

In July 2019, the People filed an amended complaint charging Banerjee with two counts of insurance fraud (Pen. Code, § 550, subd. (a)(6)), and three counts of perjury (Pen. Code, § 118). At the preliminary hearing, the People presented evidence that the insurance fraud and perjury charges were based on Banerjee's presentation of invoices or

billings, along with doctor's reports, to a workers' compensation insurer, Berkshire Hathaway Homestate Companies (BHHC), between 2014 and 2016.

The billings and doctor's reports concerned medical services that Banerjee provided to patients, between 2014 and 2016, through three entities that Banerjee owned and operated from a single location in Wildomar:  (1) Sanjoy Banerjee, M.D., Inc., doing business as Pacific Pain Care Consultants (PPCC); (2) Kensington Diagnostics, LLC (Kensington); and (3) Rochester Imperial Surgical Center, LLC (Rochester).  All of the services for which Banerjee billed BHHC, through these entities, were payable pursuant to the state's workers' compensation system.  (§ 3200 et. seq.)

2.  Banerjee's Formation of Three Service Provider Entities

Banerjee is a licensed physician, specializing in pain management.[10]  He formed his professional corporation, Sanjoy Banerjee, M.D., Inc., in 2005, and in 2010, he began operating the corporation under the fictitious name, PPCC.  Kensington and Rochester were formed in 2014.  The articles of organization for Kensington and Rochester state that they were to be managed by their members and identify Banerjee as their sole member.  Statements of information for Kensington and Rochester, filed in 2014, identify Kensington's type of business as a "clinical diagnostic and reference laboratory" and Rochester's as an "ambulatory surgical center."

---

[10]  The record indicates that Banerjee was also a qualified medical evaluator under the state's workers' compensation system.  (§ 139.2, subd. (b).)

11

As indicated, Banerjee operated PPCC, Kensington, and Rochester from a single medical office in Wildomar (the Wildomar location).[11]  Through PPCC, Banerjee billed BHHC for "physician-related services."  Banerjee billed BHHC for diagnostic-related services through Kensington, and for surgical services (epidurals) through Rochester.

3.  BHHC's Investigation of Banerjee

Gordon Oard, an investigator for BHHC, was the only witness who testified at the preliminary hearing.  Oard was tasked with investigating "suspicious" claims and service providers for BHHC, and he began investigating Banerjee in 2017.[12]  Oard discovered that Banerjee had been billing BHHC through three legal entities, namely, PPCC, Kensington, and Rochester, which Banerjee owned and operated from the Wildomar location.

Oard visited the Wildomar location, met with Banerjee there, and took pictures "of the interior of the clinic."  The Wildomar location had a lobby and front desk area, "a small closet-type room" in which toxicology tests were performed, and a "converted treatment room . . . [for] the surgery center."  In addition to Banerjee, several staff members were working at the Wildomar location.  Three plaques, one denoting Sanjoy

---

[11]  PPCC also had an office in Corona.  The articles of organization for Kensington and Rochester, filed in February and March 2014, respectively, list their street addresses as PPCC's Corona office.  But statements of information for both Kensington and Rochester, filed in April 2014, show that Kensington and Rochester were at that time located at PPCC's Wildomar location.

[12]  Oard testified that Banerjee was linked to a pharmaceutical provider who was suspected of offering financial incentives in exchange for its services.  Oard's investigation of Banerjee "spun off of that" investigation.

Banerjee, M.D., as "Pacific Pain," and two others separately denoting Kensington and Rochester, were on display in the lobby of the Wildomar location.

4. Banerjee's Billings to BHHC

Between 2015 and 2016, Banerjee presented billings totaling $157,797.01 to BHHC, through Kensington and Rochester, for services that Banerjee provided to patients between 2014 and 2016. BHHC paid less than 10 percent of the $157,797.01 amount billed. According to Oard, Banerjee was obligated to disclose his financial interests in Kensington and Rochester to BHHC, and BHHC had no business records indicating that Banerjee had made this disclosure.

The People presented additional evidence that in one instance, Banerjee twice billed BHHC, through both PPCC and Rochester, for two epidural injections (outpatient surgeries) provided to the same patient on the same day. Through PPCC, Banerjee billed BHHC $2,650,[13] on form 1500,[14] for several services he provided to his patient, C.M., on March 9, 2016, including an office examination, a urine toxicology test, and two epidural injections. It is unclear from the record how much of the $2,650 amount billed was attributable to the epidural injections, as opposed to other services provided through PPCC. But, through Rochester, Banerjee billed BHHC $12,395, on form UB 92, for the

---

[13] Oard mentioned that the amount billed was both $2,615 and $2,650, but one of these amounts appears to be a typo, and this particular PPCC billing is not part of the record in this writ proceeding.

[14] Banerjee's billings to BHHC were submitted on state-approved forms "1500" and "UB 92." Form 1500 is used for medical office visits, while form UB 92 is used for medical procedures.

same two epidural injections he provided to C.M. on March 9, 2016, through PPCC. The two billings for the two epidural injections, through PPCC and Rochester, used the same "CPT" (current procedural terminology) code numbers: 66483 and 66484.[15]

Oard testified that, before Banerjee began practicing "on his own," he practiced with a medical group in Corona that billed BHHC "for similar services at substantially less[er] amounts" than the $12,395 that he charged for the two epidurals through Rochester. A spreadsheet (People's exhibit 10) showed that Banerjee customarily billed BHHC $12,395 for epidural injections he provided to patients through Rochester. These Rochester billings were part of the $157,790.01 total amount that Banerjee billed BHHC, through both Kensington and Rochester, between 2015 and 2016. With each $12,395 billing, Banerjee submitted a document showing how the $12,395 sum was divided between various services, including an "operating room charge," "room nurse," "circulating scrub tech," and other items related to the process of administering an epidural injection.

---

[15] The parties stipulated to the authenticity and admissibility of numerous prosecution exhibits, including billing statements, doctor's reports, and other documents that Banerjee submitted to BHHC with his billings through PPCC, Kensington, and Rochester. All of these exhibits were admitted into evidence, but the record does not include many of them, including any of Banerjee's billings to BHHC through Kensington. The record indicates that, in each of his billings to BHHC through Rochester, Banerjee identified himself as the provider of the services rendered. Documents related to Banerjee's billings to BHHC through Rochester, including requests for authorization for the services, patient progress reports, and patient charts, also identified Banerjee as the provider of the services rendered through Rochester.

14

5.  The Defense's Case

The defense submitted a single exhibit (defense exhibit A), which was admitted into evidence.  This exhibit is not part of the record, but the record indicates that the exhibit is a form, titled, "Patient Consent to Procedure" (the patient consent form), which states:  "Your treating physician may have an ownership interest in the center and may gain financially by performing a procedure at the center.  You, the patient, have the right to choose where your procedure is performed.  By signing this, you consent you're agreeing to have the procedure performed at Rochester Imperial Surgical Center."

Defense counsel adduced the patient consent form while cross-examining Oard, in an attempt to show that Banerjee complied, or at least intended to comply, with the written patient disclosure requirement of section 139.3(e) before he referred patients to Rochester and Kensington.  When shown the form, Oard said he had never seen it before, and it had never been provided to BHHC.  No witness testified that Banerjee had ever used the form, and no copies of the form, signed by any patients, were offered into evidence.

6.  The Parties' Arguments

The insurance fraud charges in counts 1 and 2 are based on Banerjee's aggregate billings to BHHC, through Kensington and Rochester, between 2014 and 2016.  The prosecutor argued that these billings were false and fraudulent (Pen. Code, § 550, subd. (a)(6)), because Banerjee violated section 139.3(a) by referring the patients to Kensington and to Rochester—entities in which he had a financial interest—without informing BHHC that he had a financial interest in Kensington and Rochester.

15

Count 1, a felony charge, is based on the aggregate amount that Banerjee billed BHHC, through Kensington, between October 2, 2014, and November 24, 2015. The count was chargeable as a felony because this aggregate amount exceeded $950. (See Pen. Code, § 550, subd. (c)(2)(A) [Pen. Code, § 550(a)(6) violation chargeable as felony if total amount of claims presented during a 12-month period exceeds $950].) Count 2 is also a felony charge and is based on the aggregate amount that Banerjee billed BHHC, through Rochester, between February 6, 2015, and December 23, 2016, which also exceeded $950.

The prosecution's theory for the three perjury charges was that, between 2015 and 2016, Banerjee signed three doctor's reports for three patients, A.B., C.M., and B.B., attesting under penalty of perjury that he had not violated "section 139.3," when in fact he had violated section 139.3(a) by referring these patients to Kensington and Rochester, entities in which he had a financial interest. Each doctor's report included the following attestation near the end of the report: "I have not violated Labor Code section 139.3, and the contents of this report and bill are . . . true and correct to the best of my knowledge. This statement is made under penalty of perjury." The reports were submitted to BHHC along with Banerjee's billings for the patients through Kensington and Rochester.

The prosecutor argued that a physician's compliance with the written patient disclosure requirement of section 139.3(e) is not an exception to, and does not excuse a physician's noncompliance with, the referral prohibition of section 139.3(a), given that section 139.31, which expressly provides for exceptions to section 139.3 does not list a section 139.3(e) disclosure "as a permissible exception" to section 139.3(a). The

16

prosecutor argued, "Just because you tattle on yourself [through a §139.3(e) disclosure], doesn't mean you're now allowed to do it." The prosecutor further argued there was no evidence that Banerjee had ever disclosed his financial interests in Kensington or Rochester to the patients whom he had referred to Kensington and Rochester.

Regarding the physician's office exception to section 139.3(a), set forth in section 139.31(e), the prosecutor argued that the services Banerjee provided through Kensington and Rochester were not provided in the same "physician's office"—the Wildomar location—because Kensington and Rochester were "different and separate legal entit[ies]" from Banerjee's professional corporation, PPCC. The prosecutor also noted that Banerjee began billing BHHC substantially higher amounts for the same services after he formed Kensington and Rochester.

The defense argued that section 139.3(a)'s referral prohibition did not apply for three reasons. First, Banerjee complied with the written patient disclosure requirement of section 139.3(e) by having his patients sign his patient consent form. Second, Banerjee further complied with section 139.3(e) by placing three plaques in the lobby of the Wildomar location, identifying PPCC, Kensington, and Rochester, as separate entities. Third, the physician's office exception (§ 139.31(e)) to section 139.3(a) applied because all of the services that Banerjee provided through Kensington and Rochester were performed within the same "physician's office" and physician location, the Wildomar location. (§§ 139.31(e), 139.3(b)(5).)

Regarding the physician's office exception (§ 139.31(e)), the defense pointed out that section 139.31(e) did not prohibit services from being provided within the same

17

physician's office, at the same physical location, through separate legal entities. Defense counsel noted that, according to the People's argument, Banerjee would not have committed either insurance fraud or perjury, "if he had just not created these separate entities . . . ." In sum, defense counsel argued that Banerjee did not violate section 139.3(a) and was therefore not guilty of insurance fraud or perjury.

### 7. The Court's Rulings

Banerjee was held to answer the insurance fraud and perjury charges. The operative second amended information was later filed, and the superior court denied Banerjee's motion to set aside the information as unsupported by reasonable or probable cause. (Pen. Code, § 995, subd. (a)(2)(B).) Banerjee timely petitioned this court for a writ of prohibition, setting aside the information and the superior court's commitment order denying his section 995 motion. (Pen. Code, § 999a.)

### III. DISCUSSION

A. *Standard of Review*

"On appeal following the denial of a [Penal Code] section 995 motion, we review the preliminary hearing magistrate's determination directly and disregard the judge's [Penal Code] section 995 ruling." (*People v. Ramirez* (2016) 244 Cal.App.4th 800, 813.) "The function of the magistrate at a preliminary hearing is to determine whether there is 'sufficient cause' to believe defendant is guilty of the charged offense. ([Pen. Code,] §§ 871, 872, subd. (a).) ' "[S]ufficient cause" ' equates to ' "reasonable and probable cause" ' or 'a state of facts as would lead a [person] of ordinary caution or

18

prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused.' " (*People v. Ramirez*, at p. 813.)

" 'An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.  A reviewing court may not substitute its judgment as to the weight of the evidence for that of the magistrate, and every legitimate inference that may be drawn by the reviewing court from the evidence must be drawn in favor of the information.' " (*People v. Williams* (1988) 44 Cal.3d 883, 924-925.)

B.  *A Physician's Compliance with the Disclosure Requirement of Section 139.3(e) Does Not Excuse the Physician's Noncompliance with the Referral Prohibition of Section 139.3(a)*

Banerjee first argues that the information must be set aside because the evidence shows he did not violate section 139(a), given that he complied with section 139.3(e).  He claims that section 139.3(e) provides for an exception to the operation of section 139.3(a).  That is, he claims that a physician's compliance with the disclosure requirement of section 139.3(e) excuses the physician's noncompliance with the referral prohibition of section 139.3(a), and he complied with section 139.3(e) by having his patients sign his patient consent form before he referred the patients to Kensington and

Rochester for diagnostic and outpatient surgery services described in section 139.3(a).**16**

(a) *No Evidence Shows Banerjee Complied with Section 139.3(e)*

We first observe none of the evidence shows that Banerjee complied with section 139.3(e). Although the superior court admitted Banerjee's unsigned patient consent form into evidence, no evidence shows that Banerjee required his Kensington or Rochester patients to sign the form before he referred the patients to these entities. Nor did any witness testify that it was Banerjee's custom or practice to have his patients sign the form, and no *signed* patient consent forms, disclosing that Banerjee had a financial interest in either Kensington or Rochester, were admitted into evidence.

Moreover, Banerjee's patient consent form did not disclose that Banerjee had a financial interest in Kensington or Rochester. Section 139.3(e) requires a physician "who refers to or seeks consultation from an organization in which the physician has a financial interest" to "*disclose this interest* to the patient . . . in writing at the time of the referral." (Italics added.) By stating that Banerjee "may have" an interest in Rochester (the center) or Kensington, and that Banerjee "may benefit financially" from the procedures

---

**16** Thus, Banerjee argues he did not commit insurance fraud because his billings to BHHC through Kensington and Rochester were not false or fraudulent (Pen. Code, § 550, subd. (a)(6)), given that he complied with Labor Code section 139.3(a); and he did not commit perjury (Pen. Code, § 118) in signing the doctor's reports, certifying to BHHC under penalty of perjury that he complied with Labor Code "section 139.3," because he had, in fact, complied with Labor Code section 139.3.

20

performed through these entities,[17] the patient consent form did not disclose that

Banerjee *had* a financial interest in these entities.  (§ 139.3(e).)

Thus, even if Banerjee had all of his Kensington and Rochester patients sign his

patient consent form at the time he referred the patients to Kensington and Rochester, the

form, and therefore Banerjee, did not comply with section 139.3(e).

        (b) *Compliance with Section 139.3(e) Does Not Excuse Noncompliance*

*with Section 139.3(a)*

As we next explain, a physician's compliance with section 139.3(e) for a given

patient referral does not excuse the physician's noncompliance with section 139.3(a) for

the referral, if section 139.3(a) applies to the referral.  This is a question of statutory

construction.  "Our fundamental task in construing a statute 'is to ascertain the

Legislature's intent [and] effectuate the law's purpose.  [Citation.]  We begin our inquiry

by examining the statute's words, giving them a plain and commonsense meaning.

[Citation.]  In doing so, however, we do not consider the statutory language "in

isolation."  [Citation.]  Rather, we look to "the entire substance of the statute . . . in order

to determine the scope and purpose of the provision . . . .  [Citation.]"  [Citation.]  That is,

we construe the words in question " 'in context, keeping in mind the nature and obvious

purpose of the statute . . . .'  [Citation.]"  We must harmonize "the various parts of a

---

        **17**  As noted, the patient consent form stated:  "Your treating physician *may have* an ownership interest in the center and *may gain financially* by performing a procedure at the center.  You, the patient, have the right to choose where your procedure is performed.  By signing this, you consent you're agreeing to have the procedure performed at Rochester Imperial Surgical Center."  (Italics added.)

statutory enactment . . . by considering the particular clause of section in the context of the statutory framework as a whole." [Citations.] We must also avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend.' " (*In re Greg F.* (2012) 55 Cal.4th 393, 406.) Every statute is to be read " 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' " (*People v. Pieters* (1991) 52 Cal.3d 894, 899.)

Banerjee argues that a physician's compliance with section 139.3(e) for a given patient referral must be interpreted as an exception to, or as excusing the physician's noncompliance with, section 139.3(a) for the same referral because the two statutes are "in complete conflict" and cannot otherwise be reconciled. The statutes are not in conflict. Section 139.3(a) prohibits a physician from making a financially interested referral of a patient for *services specified* in section 139.(a), if the services are to be paid pursuant to the worker's compensation system (§ 3200 et. seq.)[18] That is, section 139.3(a) prohibits a physician from making a financially interested patient referral, but only for the services specified in section 139.3(a). In contrast, the written patient disclosure requirement of section 139.3(e) applies to *all* financially interested patient referrals, regardless of whether the services for which the patient is referred are

---

[18] As indicated, the specified services are: "clinical laboratory, diagnostic nuclear medicine, radiation oncology, physical therapy, physical rehabilitation, psychometric testing, home infusion therapy, outpatient surgery, diagnostic imaging goods or services, or pharmacy goods, whether for treatment or medical-legal purposes." (§ 139.3(a).)

22

specified in section 139.3(a). In addition, section 139.3(a) applies "notwithstanding any other law," which includes section 139.3(e).[19]

Our interpretation of section 139.3(a) and 139.3(e) is bolstered by the broader structure and scheme of sections 139.3 and 139.31. Subdivisions (a), (c), (d), (e), and (f) of section 139.3 impose separate and independent obligations on physicians, licensees, insurers, and others.[20] Each of these obligations can be performed independently of the others, regardless of whether the other obligations will be performed or have been performed. Violations of section 139.3(a), 139.3(c), 139.3(d), 139.3(e), and 139.3(f) are also separately and independently punishable under section 139.3(g). Nothing in section 139.3 makes a person's duty under one subdivision of the statute dependent upon or excused by the person's performance of a duty under another subdivision.

Additionally, unlike section 139.3, section 139.31 expressly provides for exceptions to "section 139.3." Section 139.31 is titled, "Permissible Referrals," and begins by stating: "The prohibition of Section 139.3 shall not apply to or restrict any of the following." Section 139.31 proceeds to list several scenarios or conditions in which

---

[19] Section 139.3(a) provides: "*Notwithstanding any other law*, to the extent those services are paid pursuant to Division 4 (commencing with Section 3200), it is unlawful for a physician to refer a person for [specified services] . . . if the physician or his or her immediate family has a financial interest with the person or in the entity that receives the referral." (Italics added.) In contrast, section 139.3(e) provides: "A physician who refers to or seeks consultation from an organization in which the physician has a financial interest shall disclose this interest to the patient . . . in writing at the time of the referral."

[20] See fn. 9, *ante*.

23

*section 139.3(a)* does not apply.  (§ 139.31(a)-(j).)[21]  Nothing in section 139.31 indicates that any of the subdivisions of section 139.3 are exceptions to its other subdivisions, or that compliance with one subdivision excuses noncompliance with another.  The obligation imposed by section 139.3(e), that a physician disclose the physician's financial interest in an organization to which the physician is referring the patient at the time of the referral, is not included in the list of exceptions to the prohibition of such referrals in section 139.31.

It is a settled principle of statutory construction that, "where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed." (*Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 195.)  Construing section 139.3(e) as an exception to section 139.3(a) would violate this principle.  It would also fail to harmonize sections 139.3 and 139.31 in a manner that gives effect to each of their provisions.  (*People v. Pieters*, *supra*, 52 Cal.3d at p. 899.)

Banerjee argues it is nonsensical to require a physician to disclose to a patient that the physician has a financial interest in a referred or consulted organization (§ 139.3(e)), if the physician is prohibited from referring the patient to the organization for services described in section 139.3(a).  He further argues that, unless a physician's compliance

---

[21]  For example section 139.31(a) allows a physician to refer a patient for goods or services "otherwise prohibited by" section 139.3(a) "if the physician's regular practice is where there is no alternative provider of the service within either 25 miles or 40 minutes traveling time, via the shortest route on a paved road." (§ 139.31(a).)  Section 139.31(a) reiterates section 139.3(e) by requiring "[a] physician who refers to, or seeks consultation from, an organization in which the physician has a financial interest under this subdivision to disclose this interest to the patient or the patient's parents or legal guardian in writing at the time of referral." (§ 139.31(a).)

24

with section 139.3(e) is construed as an exception to or as excusing the physician's noncompliance with section 139.3(a), then section 139.3(e) would effectively require a physician to incriminate himself for violating section 139.3(a). We disagree.

A physician's disclosure to a patient that the physician has a financial interest in an organization to which the physician refers the patient or seeks a consultation (§ 139.3(e)) makes perfect sense as a means of informing the patient that the physician has a conflict of interest with the organization, regardless of whether the services for which the patient is referred make the referral unlawful under section 139.3(a). The section 139.3(e) disclosure informs the patient that the patient's interests may best be served by seeking the services or the consultation from another organization, given that the referring physician's financial interest, rather than the patient's best interests, may be motivating the physician to make the referral or to seek the consultation.

In addition, the Legislature could have reasonably determined that section 139.3's purpose of reducing costs and strengthening conflict of interest rules in the workers' compensation system would best be served by making section 139.3(e) apply to *all* financially interested physician referrals, regardless of whether the referral is for services specified in section 139.3.(a). If referrals prohibited by section 139.3(a) were exempted from the disclosure requirement of section 139.3(e), then referrals prohibited by section 139.3(a) might never come to light, and the cost-saving and conflict-of-interest-strengthening purposes of section 139.3 would be undermined.

Lastly, given that section 139.31 provides for exceptions to section 139.3(a), a physician may disclose that the physician has a financial interest in an organization to a

25

patient, and refer the patient to that organization for services described in section 139.3(a), without violating section 139.3(a), if one or more of the exceptions listed in section 139.31 applies.  For this reason, and because section 139.3(e) applies to *all* financially interested physician referrals, including referrals that are not prohibited by section 139.3(a), the physician does not necessarily incriminate himself for violating section 139.3(a) by complying with section 139.3(e).

C. *Sections 139.3(a), 139.3(e), and 139.31(e) Are Not Unconstitutionally Vague*

Banerjee claims that the interplay or combined operation of sections 139.3(a), 139.3(e), and 139.31(e) are unconstitutionally vague; therefore, he cannot be criminally charged, as he is here, with any crime based on his alleged violation of section 139.3(a).  We disagree that the statutes are unconstitutionally vague.

1.  Applicable Legal Principles

The government violates a person's Fifth Amendment right to due process of law "by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." (*Johnson v. U.S.* (2015) 576 U.S. 591, 595.)  Thus, "[t]o satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.' " (*Skilling v. U.S.* (2010) 561 U.S. 358, 402-403.)  A statute is void as unconstitutionally vague unless it satisfies both of these requirements.  (*Id.* at p. 403.)

26

Courts are required to construe statutes in a limited way, in order to save the statutes from being unconstitutionally vague, if this is fairly possible. (*Skilling v. U.S.*, *supra*, 561 U.S. at p. 403.) As courts have long observed, "[t]he elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." (*Hooper v. Cal.* (1895) 155 U.S. 648, 657.) That is, a statute will not be construed as void for vagueness " ' " ' 'if any reasonable and practical construction can be given to its language' " ' " (*In re Perdue* (2013) 221 Cal.App.4th 1070, 1077), or " ' "if its terms may be made reasonably certain . . . " ' " (*People v. Hall* (2017) 2 Cal.5th 494, 500-501).

2. Section 139.3(a) and 139.3(e)

Banerjee first argues that sections 139.3(a) and 139.3(e) are "unconstitutionally conflicting" for the same reasons he claims that compliance with section 139.3(e) must be construed as an exception to or as excusing noncompliance with section 139.3(a). As we have explained, section 139.3(a) and 139.3(e) are not in conflict, and the language of each statute is sufficiently definite to apprise a person of ordinary intelligence of what it prohibits and requires. (*Skilling v. U.S.*, *supra*, 561 U.S. at pp. 402-403.)

Banerjee next argues that section 139.3(e), standing alone, is unconstitutionally vague because it does not "state with definiteness how specific a disclosure must be, or what specific language a physician must use in a disclosure." The statute provides: "A physician who refers to or seeks consultation from an organization in which the physician *has a financial interest shall disclose this interest* to the patient or if the patient is a minor, to the patient's parents or legal guardian in writing at the time of the referral."

27

(§ 139.3(e), italics added.)  Section 139.3(e) is not unconstitutionally vague simply because it does not require any particular language to be used in the disclosure, or precisely state how specific the disclosure must be.  The terms of section 139.3(e) are reasonably certain.  (*Ivory Education Institute v. Department of Fish & Wildlife* (2018) 28 Cal.App.5th 975, 981 [Only a reasonable degree of certainty is required to save a statute from being void for vagueness.].)

A physician may comply with section 139.3(e) by disclosing to the patient in writing at the time of the referral that the physician "has a financial interest" in the referred or consulted organization.  (§ 139.3(e).)[22]  Nothing in section 139.3(e) requires the physician to disclose the precise nature or extent of the financial interest.  In addition, the disclosure of details concerning the financial interest is unnecessary to inform the patient that the physician has a conflict of interest in the referral.  If the physician's financial interest disclosure form states that the physician has "a financial interest" in the organization referred or consulted, the physician will have complied with section 139.3(e).)

3.  The "Physician's Office" Exception (§ 139.31(e))

Section 139.31(e) provides:  "The prohibition of section 139.3 shall not apply to any services for a specific patient that is performed within, or goods that are supplied by, a physician's office . . . ."  Banerjee claims that section 139.31(e) is unconstitutionally

_____

[22]  Section 139.3(b)(4) defines "financial interest" for purposes of sections 139.3 and 139.31.  See fn. 6, *ante*.

28

vague because it does not specify what " 'within . . . a physician's office' " means, and because other parts of section 139.31 do not provide guidance.

Section 139.3(b)(5) defines "physician's office," for purposes of sections 139.3 and 139.31, as "either of the following: [¶] (A) An office of a physician in a solo practice," or "(B) An office in which the services or goods are personally provided by the physician or by employees in that office, or personally by independent contractors in that office, in accordance with other provisions of law. . . ." Thus, neither the definition of "physician's office" (§ 139.3(b)(5)) nor the language of section 139.31(e) specifies whether the physician's office exception (§ 139.31(e)) to the referral prohibition of section 139.3(a) applies only if the services described in section 139.3(a) are provided at (1) the *same physical office location*, (2) are provided through *a single legal entity*, or (3) are provided *both* at the same physical office location *and* through a single legal entity.

But section 139.31(e) can be fairly construed as applying to services and goods described in section 139.3(a), that are provided to a patient in more than one physical office location, through more than one legal entity, or both *provided* that the services are performed and the goods are provided either (1) by a single physician in a "solo practice" (§ 139.3(b)(5)(A)), or (2) by licensed employees or independent contractors working under the auspices of a single physician (§ 139.3(b)(5)(B)). Nothing in sections 139.3 or 139.31 is inconsistent with this interpretation of section 139.31(e).

This interpretation of section 139.31(e), together with the operation of section 139.3(e), ensures that patients who are treated for services or who are provided with

29

goods specified in section 139.3(a), whether by a single physician or by other licensed health care providers working under the auspices of a single physician (§ 139.3(b)(5)), will have been informed that the physician has a financial interest in any legal entities that are part of the physician's practice (§ 139.3(e)), and to which the patient is referred for services or goods specified in section 139.3(a).

This interpretation of section 139.31(e) is also supported by the second sentence of section 139.31(e), which states, "Further, the provisions of section 139.3 shall not alter, limit, or expand a physician's ability to deliver, or direct and supervise the delivery of, in-office goods or services according to the laws, rules and regulations governing his or her scope of practice." The parties have not pointed to nor are we aware of any laws, rules, or regulations that would prohibit a physician, who specializes in pain management such as Banerjee, and who treats patients for services paid pursuant to the workers' compensation system (§ 3200 et seq.), from providing services or goods described in section139.3(a) through separate legal entities.

D. *Our Interpretation of Section 139.31(e) Means That the Perjury Charges Are Unsupported, but Probable Cause Supports the Insurance Fraud Charges*

Our interpretation of the physician's office exception of section 139.31(e) means that the exception applied to Banerjee's referrals of patients to Kensington and Rochester (§ 139.3(a)), and that Banerjee did not violate section 139.3(a) by referring patients for services specified in section 139.3(a) to Kensington and Rochester. Thus, Banerjee's acts of signing three doctor's reports, under penalty of perjury, certifying to BHHC that he had complied with "section 139.3" was not false (§ 118). Given that Banerjee's allegedly

30

false certification of his compliance with "section 139.3" was the only basis to support the perjury charges, the perjury charges must be dismissed.[23]

The People's theory for the insurance fraud charges is that Banerjee presented false and fraudulent billings to BHHC for services described in Labor Code section 139.3(a), after he referred the patients to Kensington and Rochester for the services, in violation of Labor Code section 139.3(a). (Pen. Code, § 550, subd. (a)(6).) Even though the People did not show that Banerjee violated section 139.3(a), because the physician's office exception applied to the otherwise prohibited referrals (§ 139.31(e), the record supports an alternative basis to support the insurance fraud charges.

As discussed, Penal Code section 550, subdivision (a)(6), a form of insurance fraud, is committed when the defendant knowingly makes or causes to be made any false or fraudulent claim for a health care benefit. (*People v. rel. ex re. Government Employees Ins. Co. v. Cruz*, *supra*, 244 Cal.App.4th at p. 1193.) Insurance fraud is a specific intent crime; the defendant must specifically intend to defraud a person with a false or fraudulent claim. (*People v. Scofield*, *supra*, 17 Cal.App.3d at pp. 1025-1026.) The evidence adduced at the preliminary hearing shows that the superior court had probable cause to believe that Banerjee was guilty of the insurance fraud charges. (*People v. Ramirez*, *supra*, 244 Cal.App.4th at p. 813.)

---

[23] Although the evidence adduced at the preliminary hearing does not show that Banerjee complied with the patient disclosure requirement of section 139.3(e), Banerjee's noncompliance with *section 139.3(a)* was the sole basis the People offered to support the perjury charges. The People did not attempt to show that Banerjee committed perjury by failing to comply with section 139.3(e). Banerjee's failure to show that he complied with section 139.3(e) does not foreclose the possibility that he complied with section 139.3(e).

The evidence showed that, between 2014 and 2016, Banerjee presented false and fraudulent claims for health care benefits to BHHC through Kensington and Rochester, with the specific intent to defraud BHHC. Banerjee's billings through Kensington and Rochester were for substantially higher amounts than Banerjee had previously billed BHHC for the same or similar services that he provided solely through PPCC, and that BHHC had been billed by the group practice with whom Banerjee had formerly practiced. Banerjee did not inform BHHC that he owned and operated Kensington and Rochester; and in one instance, Banerjee double billed BHHC for two epidural injections provided to the same patient on the same day, through PPCC and Rochester. The Rochester billing for the two epidural injections was approximately $9,000 higher than the total billing for the patient through PPCC.

The record also supports a strong suspicion that Kensington and Rochester were sham entities, and that Banerjee formed Kensington and Rochester with the specific intent to defraud BHHC through his Kensington and Rochester billings. The Kensington and Rochester billings gave the appearance that the entities were not part of Banerjee's medical practice but were stand alone, diagnostic testing and surgical centers, operating independently of any physician's office. But when BHHC's investigator, Oard, visited Banerjee's Wildomar location, he discovered that Banerjee was operating Kensington from "a small closet-type room," and that Banerjee was operating Rochester from a "converted treatment room." The evidence supports a strong suspicion that Banerjee had no business reason for forming Kensington and Rochester, other than to use them to present highly inflated billings for his diagnostic and surgical services to BHHC. (*People*

32

*v. Ramirez, supra*, 244 Cal.App.4th at p. 813.)  The information cannot be set aside as to the insurance fraud charges because the evidence demonstrates that there is some rational ground for assuming the possibility that those offenses have been committed and the defendant is guilty of them.

## IV.  DISPOSITION

Let a writ of prohibition issue, ordering the respondent superior court to set aside its order denying Banerjee's Penal Code section 995 motion and to enter a new order granting the motion, in part, as to the three perjury charges (counts 3, 4, and 5.)  Further proceedings may continue, and this court's previous order staying further proceedings on the information is lifted, insofar as the stay order concerned the pending criminal prosecution against Banerjee for the two insurance fraud charges.  (Pen. Code, § 550, subd. (a)(6).)  Banerjee is directed to prepare and have the writ of prohibition issued, copies served, and the original filed with the clerk of this court, together with proofs of service on all parties.

CERTIFIED FOR PUBLICATION

FIELDS _____
J.

We concur:


MILLER _____
Acting P. J.


CODRINGTON _____
J.

33